1066

GENERAL SECURITIES CORPORATION *v.*
LAVON V. WATSON ET AL

5-5754                                    477 S.W. 2d 461

Opinion delivered February 28, 1972
[Rehearing denied April 10, 1972.]

*Pope, Pratt, Shamburger, Buffalo & Ross,* for appellant.

*Jones & Segers,* for appellees.

CARLETON HARRIS, Chief Justice. This litigation results from the inability of Lavon V. Watson and Dr. Phil Deal, appellees herein[1], of Washington County, to agree with appellant, General Security Corporation, on the "fair value" of stock owned by appellees in Arkansas Factors, Inc. and First Financial Corporation, these two companies being merged with appellant, the surviving

---

[1]After the suit was commenced, Dr. Deal died as the result of an airplane accident and the cause of action as to him was revived in the name of his executrix, Mrs. Deal.

corporation. The plan of merger provided for 8 shares of Arkansas Factors for 1 share of General Security.[1a] Watson owned 10,000 shares of Arkansas Factors, Inc. and 10,000 shares of First Financial Corporation. Deal owned 5,606 shares of Arkansas Factors, Inc. and 6,000 shares of First Financial Corporation. Watson testified that this meant that he would have received 53 cents per share on Arkansas Factors and 22½ cents per share on First Financial. Watson and Deal were not willing to acept this amount and, as dissenting shareholders, followed the provisions of Ark. Stat. Ann. § 64-707 (Repl. 1966) and instituted suit in the Pulaski County Circuit Court seeking a determination of the fair value of the shares held by them. Evidence was presented by both sides, and at the conclusion thereof, the jury, in answer to interrogatories propounded to it, assessed a value of $1.00 per share on Arkansas Factors and $.75 a share on the First Financial stock, judgment accordingly being entered for Watson in the amount of $17,500, and Mrs. Deal in the amount of $10,106. From the judgment so entered, appellant brings this appeal. For reversal, it is first asserted that the court erred in admitting into evidence appellees' exhibits number 6, 7, and 9, and it is also urged that there was no competent evidence on which to base the stock value reached by the jury. We proceed to a discussion of these points in the order listed.

Exhibit number 6 was a prospectus issued by Arkansas Factors on August 24, 1964, in connection with a public offering of stock at a price of $1.00 per share. Exhibit number 7 was a prospectus issued by Arkansas Factors on August 8, 1965, in connection with a public offering of stock at a price of $1.50 per share. Exhibit number 8 was a prospectus issued by First Financial Corporation on November 28, 1967, in connection with a public offering of stock at a price of $.75 per share. Appellant argues that the court erred in permitting these prospectuses to be offered in evidence because they were too remote from the date of the merger (March 24, 1970), to have any bearing on the fair value of the stock at that time. The provisions of § 64-707 have not heretofore been passed upon by this court, and we have no case

[1a]The plan provided for 20 shares of First Financial for one share of General Security.

authority on what constitutes "fair value"; however in *Victor Broadcasting Co., Inc.* v. *Mahurin*, 236 Ark. 196, 365 S. W. 2d 265, we did say that there is no set formula to determine the "fair cash value"[2] of stock. A study of cases from other jurisdictions reflects that there is no set standard, or formula, for determining fair value. In the Maryland case of *American General Corporation* v. *Camp*, 190 A. 225, the Court of Appeals stated:

"The problem of finding the fair value of stock is a special problem in every particular instance. Since the dissentient will not unite with the majority, the value of his stock should not be affected by a corporate change in which he refused to participate, whether the result be appreciation or depreciation, and this the statute recognizes and eliminates but otherwise affords no express criterion of fair value. * * * The owner of shares of stock in a corporation whose legal existence is at an end would be entitled to receive the aliquot proportion which the number of shares held would be entitled to receive in the distribution of the net amount of the corporate funds in which his particular kind of stock would be entitled to share. Thus, by an ascertainment of all the assets and liabilities of the corporation, the intrinsic value of the stock, and not merely its market value, when traded in by the public, would be determined. If the dissenting owner received this amount, so ascertained, he would receive the fair value of his stock.

The general problem therefore, would be, in every instance of an appraisal pursuant to the statute, to ascertain the fair value. Every appraisal would as a rule be a particular problem which would vary with the kind of corporation, the nature, extent, and methods of its operations, the state of its assets, the form and incidence of its liabilities, and with many other circumstances too numerous to admit of a general classification."

In the Missouri case of *Phelps* v. *Watson-Stillman*

---

[2]Statutes from various states use the term "value", "fair value", "fair cash value", "market value", and "full market value", all referring to "fair value".

*Company*, 293 S. W. 2d 429, the Supreme Court of Missouri stated in its discussion of fair value:

"As previously noted, there is no simple mathematical formula and each case presents its particular problem, but in general some of the factors to be considered and weighted are asset value, earnings, dividends, management and 'every relevant fact and circumstance which enters into the value of the corporate property and which reflects itself in the worth of corporate stock * * *.' "

The holdings from other jurisdictions are in the same vein. We cannot agree that the court committed error in permitting these exhibits to be offered, for, in our view, the selling price of the stock was simply another circumstance which entered into the overall value of the property. It might be mentioned that, while appellant objected to the introduction of this evidence, no objection was made to an instruction given at the conclusion of the testimony by the court which told the jury, *inter alia*, that the selling price of the stocks on previous sales could be considered.[3] We find no merit in appellant's first point.

For its second point, appellant contends that there was no substantial evidence to support the jury verdict. In the case before us, Mr. James David Holiday, a stock broker with A. G. Edwards and Sons,[4] and who had been engaged in the stock brokerage business for the past seven years, testified on behalf of appellees. He stated that he frequently evaluated stock, and had caused to be made an evaluation of the shares of stock of Arkansas Factors and First Financial Corporation for the purpose of setting a fair value as of March 24, 1970, when those companies were merged into General Security Corpora-

---

[3] Watson paid $1.00 per share for Arkansas Factors and $.50 per share for First Financial. The record does not reflect what Deal paid.

[4] According to the witness, Edwards & Sons is a "fully integrated brokerage firm, member of the New York Stock Exchange, American, about five or six lesser exchanges. We're also a commodity leader, member of the Chicago Board of Trade and the Chicago Mercantile Exchange and five or six others. A full line".

tion. Mr. Holiday testified that a numer of different factors are taken into consideration, *viz*, the earning capacity of the corporation. . . the investment value of the particular stock. . . the dividends that have been paid. . . the regularity of the dividends. . . the selling price of the stock on previous sales. . . the selling price of similar stocks. . . the apparent future and good will of the corporation.[5] He said that these corporations were money lending corporations and that the demand for money for the past three or four years had been very good:

"As a matter of fact, interest rates for the past couple or three years at one point they reached the highest since the Civil War. So, the opportunity for having earnings during the past or during the course of this—both of these corporations' existence should have been at its peak because of the demand for money. There's always demand for money."

With regard to Arkansas Factors, the witness stated that that company had been extremely liberal in paying dividends:

"In one year they earned approximately $15,400 and they paid almost all of that with the exception of about a hundred dollars in dividends. As a matter of fact, one year they paid more than they actually earned in dividends. So as I say they are extremely liberal. This is a definite plus factor as far as figuring the fair value of the company. Their willingness to pay dividends. As far as the selling price of the stock on previous sales from the times that I have seen the stocks—Arkansas Factors, for example, is traded as low as seventy-five cents a share and as high as a dollar and a half a share. As far as First Financial is concerned, it's traded as low as fifty cents a share and it's traded as high as a dollar as far as I know."

The witness also stated that he had taken into consideration that Arkansas Factors had lost money for 1968, 1969, and the first three months of 1970, and that First Financial had lost money in 1968 but had shown a profit

---

[5] The witness said that book value was only of significance when the company is liquidating, *i. e.*, going into bankruptcy, and in this particular instance he gave no consideration to book value.

in 1969 and a profit through March 1970. Holiday said that though these losses were considered, "this was not as big a factor in my estimation as the assets of the corporation".[6] Taking all factors into consideration, the witness was of the opinion that the value of Arkansas Factors stock on March 23, 1970, was at least $1.00 per share, and that the value of First Financial was at least $.75 per share. It is true that Robert W. Bass, a stock broker with the firm of Dabbs Sullivan-Trulock & Co., and Tom Donovan, Treasurer of General Security Corporation, disagreed with the findings of Holiday, but we are only concerned with whether there was competent evidence offered on behalf of appellees that would support the judgment rendered. We are of the opinion that Holiday was a qualified witness and it appears that he considered facts and circumstances in reaching his conclusions that we deem to be relevant for a proper determination. The question of which witnesses to believe was solely a jury matter. It follows from what has been said that we find no reversible error.

---

[6]Mr. Watson had testified that among its assets, Arkansas Factors owned 102 lots and 431 acres at Greers Ferry in Cleburne County, and he was of the opinion that the value of these lots had increased considerably since their purchase.