# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 04-3656

_____

| | | |
|---|---|---|
| First Union National Bank, as Trustee of the Southeast Timber Leasing Statutory Trust, | * * * * | |
| Plaintiff - Appellant, | * * | |
| v. | * * * | Appeal from the United States District Court for the Eastern District of Arkansas. |
| Paul Benham; Paul Benham, PA; Friday, Eldredge & Clark, LLP, | * * * | |
| Defendants - Appellees, | * * * * * | |
| _____ | * | |
| Paul Benham; Paul Benham, PA; Friday, Eldredge & Clark, LLP, | * * * | |
| Third Party Plaintiffs, | * * * | |
| v. | * * | |
| Carl J. Stoney; Jason Kuhns, | * * | |
| Third Party Defendants. | * | |

_____

Submitted: June 23, 2005
Filed: September 13, 2005

_____

Before MURPHY, BYE, and SMITH, Circuit Judges.
_____

SMITH, Circuit Judge.

First Union National Bank, as Trustee of the Southeast Timber Leasing Statutory Trust, ("SE Timber") commenced this legal malpractice lawsuit against Paul Benham ("Benham"), a merger and acquisitions attorney, and his law firm, Friday, Eldredge & Clark, LLP, for failure to timely file a lawsuit pursuant to Ark. Code Ann. § 4-27-1330 to determine the fair value of stock acquired by SE Timber during a merger with First Land and Timber Corporation ("First Land and Timber"). The district court excluded the proffered testimony of SE Timber's legal expert, ruling that the expert lacked the qualifications necessary to testify regarding the applicable standard of care of an Arkansas attorney. At the end of SE Timber's case in chief, the district court granted judgment as a matter of law in favor of Benham, holding that because SE Timber failed to present expert testimony, (1) SE Timber was unable to prove that Benham's acts amounted to legal malpractice and (2) SE Timber was unable to show as a matter of law that but for Benham's negligence, it could have won a trial concerning the fair value of the stock it acquired in the merger. SE Timber timely appealed the district court's exclusion of its expert testimony and judgment as a matter of law in favor of Benham. We reverse and remand to the district court for a new trial.

## I. *Background*

In 1997, First Land and Timber hired Frank Brown ("Brown") of Brown and Burke Capital Partners, Inc. to determine the fair price for all of its timberland and bank stock and arrange a sale of the stock. Brown estimated the price at between $51 million and $54 million. Brown formed SE Timber for the sole purpose of buying all of First Land and Timber's stock and offered a price of $65 million. SE Timber hired Carl Stoney ("Stoney"), a California merger and acquisitions attorney, to assist in the sale by arranging a merger between First Land and Timber and SE Timber. Pursuant

-2-

to the merger, SE Timber, as the surviving entity, would pay First Land and Timber's stockholders $65 million. This amount was approved as fair value by all but one of First Land and Timber's stockholders, Pictet Overseas Trust Corp. Ltd., as Trustee of the Henrietta Y. Jones Trust (hereinafter "Pictet"). Because Stoney was not licensed to practice in Arkansas, SE Timber hired Benham, an Arkansas attorney and partner in the law firm of Friday, Eldredge & Clark, LLP, to represent it against Pictet's dissenters' claim. Benham informed Pictet that he was representing SE Timber concerning Pictet's claims.

Pictet wrote a letter to Benham dated October 30, 1998, a copy of which was also sent to First Land and Timber, demanding a fair value estimate of First Land and Timber's stock at $88 million instead of $65 million.[1] Pictet also stated that the demand was made pursuant to Ark. Code Ann. § 4-27-1328, which allows a dissenting shareholder to reject the corporation's offer of payment and notify the corporation in writing of its own estimate of the fair value of its shares.

SE Timber did not bring suit within 60 days of Pictet's October 30, 1998 letter as required by Ark. Code Ann. § 4-27-1330. Instead, on January 6, 1999, Benham, on behalf of SE Timber, offered to pay Pictet based on a fair value estimate of $65 million. This offer was rejected on January 15, 1999, in a letter that was virtually identical to the letter sent by Pictet on October 30, 1998. On January 20, 1999, Benham advised SE Timber of Pictet's January 15, 1999 letter. According to Benham, the January 15, 1999 letter triggered the 60-day rule under § 4-27-1330. Benham did not advise SE Timber that the October 30, 1998 letter would trigger the 60-day rule.

---

[1]This estimate was based on a bid from a company called MERL, who offered to swap some of its preferred stock for all the stock in First Land and Timber. Under MERL's proposal, seven years after the swap, it would buy back its preferred stock for $88 million. According to Brown, the offer was unacceptable because First Land and Timber wanted to sell its assets, not make another investment. Brown also noted that seven years after making its offer, MERL went out of business.

Benham initially advised SE Timber that Arkansas law required Pictet to file a lawsuit against SE Timber to obtain the fair value of $88 million demanded in its letter. Later, however, on February 12, 1999, Benham advised SE Timber that § 4-27-1330 required SE Timber to file a lawsuit to obtain a judicially derived fair value and avoid the amount demanded. SE Timber instructed Benham to file suit on March 15, 1999.

In that suit, the district court granted summary judgment in favor of Pictet, holding SE Timber failed to comply with § 4-27-1330 by filing a lawsuit within 60 days of the October 30, 1998 letter. SE Timber was ordered to pay Pictet according to a fair value estimate of $88 million, which resulted in Pictet receiving $1,789,303 more than the other stockholders. SE Timber was further ordered to pay Pictet $80,514.37 in costs and attorney's fees.[2]

SE Timber filed a complaint in the United States District Court for the Eastern District of Arkansas against Benham and Friday, Eldredge & Clark, LLP, alleging legal malpractice. SE Timber filed a motion for summary judgment, which included the affidavit of Charles Owen ("Owen"), an Arkansas attorney, who opined that Benham's conduct in representing SE Timber had fallen below the applicable standard of care. Owen based his opinion, in part, upon Benham's failure to notify SE Timber that Pictet's October 30, 1998 letter complied with § 4-27-1328 and Benham's failure to file a stock valuation suit within 60 days of that letter as required by § 4-27-1330. In support of his opposition to summary judgment, Benham submitted the affidavit of Arkansas attorney John Tisdale ("Tisdale"). Tisdale opined that Benham exercised reasonable skill and diligence as ordinarily used by other attorneys in good standing in Arkansas. According to Tisdale, Pictet's October 30, 1998 letter did not

---

[2]In addition, Pictet sued SE Timber for conversion and breach of fiduciary duty. According to SE Timber, these claims, as well as resisting Pictet's summary judgment, have cost an additional $182,183.31 to defend.

meet the requirements of a demand letter as required under § 4-27-1328 and therefore the 60-day rule under § 4-27-1330 was not triggered until receipt of the January 15, 1999 letter. The district court denied SE Timber's motion for summary judgment, ruling that genuine fact issues remained concerning whether Benham's representation fell below the generally accepted standard of care.

SE Timber's malpractice suit against Benham proceeded to a jury trial on October 12, 2004. After having already denied a motion in limine to disqualify Owen as an expert, the district court ruled him unqualified to testify under Rule 702 of the Federal Rules of Evidence. According to the district court, Owen lacked the experience or education relating to the standards and practice of an Arkansas attorney for his testimony to show sufficient relevance and reliability under the facts and circumstances of this case. At the close of SE Timber's case in chief, Benham moved for judgment as a matter of law. The district court ruled that SE Timber was required to present expert testimony as to the relevant standard of practice of an Arkansas attorney because the issue was not within the common knowledge of a lay person. The district court also determined that expert testimony was required to show whether SE Timber would have prevailed in the underlying stock valuation suit against Pictet. Because SE Timber's proposed expert was disqualified, SE Timber presented no expert testimony on either issue. Based upon these determinations, the district court granted judgment as a matter of law in favor of Benham.

SE Timber timely filed a notice of appeal, arguing that the district court (1) abused its discretion by ruling Owen unqualified to testify as an expert to the applicable standard of practice in Arkansas; (2) erred in determining that the issue of legal malpractice in this case was not within the common knowledge exception; and (3) erred in ruling that as a matter of law, expert testimony was required to show that but for Benham's alleged negligence, the outcome of the underlying stock valuation lawsuit would have been different.

II. *Discussion*

A. *Arkansas Law: Legal Malpractice*

We review the district court's interpretation of state law de novo. *Vanderford v. Penix*, 39 F.3d 209, 211 (8th Cir. 1994). Under Arkansas law, "an attorney is negligent if he or she fails to exercise reasonable diligence and skill on behalf of a client." *Barnes v. Everett*, 95 S.W.3d 740, 744 (Ark. 2003) (citations omitted). To prevail on its claim of attorney malpractice, SE Timber must show that Benham's "conduct fell below the generally accepted standard of practice and that such conduct proximately caused . . . [SE Timber] damages." *Id.* To prove damages and proximate cause, SE Timber must show that, but for the alleged negligence of Benham, the result in the underlying action would have been different. *Id.* This requires SE Timber to prove a case within a case, or in other words, SE Timber must prove the merits of the underlying case as part of its proof of malpractice. *Id.* Arkansas law "has consistently held that the attorney's conduct must be measured against the generally accepted standard of practice." *Id.*

> An attorney is not liable to a client when, acting in good faith, he or she makes mere errors of judgment. Moreover, an attorney is not, as a matter of law, liable for a mistaken opinion on a point of law that has not been settled by a court of the highest jurisdiction and on which reasonable attorneys may differ.

*Id.* To prove its case to a jury, SE Timber had to present "expert testimony as to what the standard of practice is, unless the . . . [district] court determine[d] that such testimony [wa]s not necessary because the case falls within the common-knowledge exception." *Id.* at 749.

In this case, the district court ruled that (1) Owen was not qualified to testify as an expert to the applicable standard of practice of an Arkansas attorney and (2) SE Timber's claim failed as a matter of law because (a) the issue of legal malpractice in

this case did not fall within the common-knowledge exception and (b) expert testimony was required to show that the outcome of the underlying lawsuit would have been different but for the alleged malpractice. We address these issues in turn.

B. *Admissibility of Expert Testimony*

We review the district court's decision regarding the admissibility of expert-witness testimony for an abuse of discretion. *Craftsmen Limousine, Inc. v. Ford Motor Co.*, 363 F.3d 761, 776 (8th Cir. 2004). Federal Rule of Evidence 702 governs the admission of expert testimony and provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, or experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

We give district courts great latitude in determining whether expert testimony meets the reliability requisites of Rule 702. *Craftsmen Limousine, Inc*, 363 F.3d at 776. Under Rule 702, it is the trial judge, in admitting expert testimony, who has the gatekeeping responsibility to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141 (1999) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)). In making that determination, the district court may evaluate one or all of the following factors: (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether the theory or technique has a known or potential error rate and standards controlling the technique's operation; and (4) whether the theory or technique is generally accepted in the scientific community. *Daubert*, 509

U.S. at 593–94; s*ee also Craftsmen Limousine, Inc.*, 363 F.3d at 776–77 (applying *Daubert* to expert witness testimony in an antitrust case). Regardless of what factors are evaluated, the main inquiry is whether the proffered expert's testimony is sufficiently reliable. *See Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2005) ("[t]here is no single requirement for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant").

The district court ruled that Owen had not demonstrated the experience or the education to show sufficient reliability in his opinions. While acknowledging Owen's substantial experience in the merger and acquisition fields, the district court found that because Owen's conclusions were based on his own experience and not from the experience of other lawyers, his assessment of what a reasonable lawyer might do is insufficient. Specifically, the district court reasoned that:

> Mr. Owen testified to substantial experience in the merger and acquisition fields. I think it fair to say that he has established expertise broadly in that area. What of the specific issues here, which is the knowledge about what a reasonable lawyer in Arkansas would do with respect to complying with that statute? *As I interpreted his testimony, that comes from experience in two cases, and not from what other lawyers have done, but what he did, and from that concludes that a reasonable lawyer would do what he did. I don't think that passes the test of having expertise–it doesn't mean his judgment is bad or that he would do it wrong. I'm talking not at all about that. I'm talking about his assessment of what a reasonable lawyer would do.* It does not rely upon education, investigation, scholarly works, tests of any kind, special study that he has made as exhibited by writings.
>
> . . . .
>
> No effort was made to learn the history of the statute: Why was this done? How was it done? What are the concepts that are being breathed into the statute? Hopefully are expressed well, hopefully will be interpreted rightly, as the legislature intended.
>
> . . . .

-8-

I mean it Mr. Owen, when I say I mean no disrespect to you. But I am deserting my gatekeeping duty if I don't say what I mean, and what I mean is, I think that in this circumstance, the issues involved in this case, that I must say you have not demonstrated the experience or the education to show sufficient relevance and reliability in your opinions relating to the issues, which are very tight, small, and may be–not unimportant, but I mean small, specific issues that are at issue here.

(Emphasis added.)

The district court's ruling cannot be reconciled with Rule 702, which expressly allows a witness to qualify as an expert based on his own knowledge, skill, experience, training or education. *See* Fed. R. Evid. 702. We have excluded expert testimony because a proffered expert lacked personal experience in the area of testimony. *See Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706 (8th Cir. 2001). In *Wheeling Pittsburgh Steel Corp.*, we held that it was an abuse of discretion to allow a hydrologist to testify as an expert regarding safe warehousing practices. *Id.* at 715. In so ruling, we reasoned that it was clear that "a hydrologist specializing in flood risk management . . . easily qualifies as an expert under *Federal Rule of Evidence* 702 . . . [and t]hough eminently qualified to testify as an expert hydrologist regarding matters of flood risk management, . . . [the expert] sorely lacked the *education, employment, or other practical personal experiences* to testify as an expert specifically regarding safe warehousing practices." *Id.* (Emphasis added.)

The district court's ruling also attacks the factual basis of Owen's expert testimony. "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Bonner v. ISP Tech., Inc.,* 259 F.3d 924, 929–30

(8th Cir. 2001) (quoting *Hose v. Chicago Northwestern Transp. Co.,* 70 F.3d 968, 974 (8th Cir. 1995) (internal citations and quotations omitted)). Owen's testimony was not so fundamentally unsupported that it can offer no assistance to the jury.

Owen has been an attorney licensed in the state of Arkansas for over 36 years and has practiced extensively in the area of mergers and acquisitions. Arkansas is the only state where Owen has maintained a license. Owen has previously received demand letters from dissenting shareholders and was familiar with §§ 4-27-1328 and 4-27-1330. He answered in the affirmative when asked whether his opinion refers to an attorney with reasonable diligence and the skill ordinarily used by attorneys. He answered in the affirmative when asked whether his experience made him aware of the reasonable degree of care that an attorney must apply in this case. In making his opinion, Owen relied upon the depositions of the parties, the witnesses, the facts and circumstances surrounding SE Timber's merger with First Land and Timber and acquisition of its stock, and his own experience. Given these facts, we hold the district court abused its discretion in disallowing Owen's expert testimony on the issue of legal malpractice in Arkansas.[3]

### C. *Judgment as a Matter of Law*

We review the grant or denial of judgment as a matter of law de novo, applying the same standards used by the district court. *Phillips v. Collings,* 256 F.3d 843, 847 (8th Cir. 2001). According to Rule 50 of the Federal Rules of Civil Procedure, judgment as a matter of law should not be granted unless "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a)(1). In applying this standard, we draw "all reasonable inferences in favor of the nonmoving party without making

---

[3]Having determined that the district court erred in excluding SE Timber's expert, we need not reach the issue whether this malpractice case fits the common-knowledge exception.

credibility assessments or weighing the evidence." *Phillips,* 256 F.3d at 847 (citations omitted). "A reasonable inference is one 'which may be drawn from the evidence without resort to speculation.'" *Fought v. Hayes Wheels Int'l, Inc.,* 101 F.3d 1275, 1277 (8th Cir. 1996) (quoting *Sip-Top, Inc. v. Ekco Group, Inc.,* 86 F.3d 827, 830 (8th Cir. 1996)). Judgment as a matter of law is appropriate "[w]hen the record contains no proof beyond speculation to support [a] verdict." *Sip-Top, Inc.,* 86 F.3d at 830 (citation omitted).

The district court ruled that expert testimony is required to show SE Timber's likelihood of success in the underlying action. In so ruling, the district court reasoned:

> Suffice it to say, Mr. McDermott's client here hasn't shown that there would have been victory there. Would that require expert evidence? Well, I suspect so. . . . I strongly suspect it would require expert damage, and it certainly requires some evidence that they would have won, not just they would have had evidence that the jury could have found for them if it had believed all its evidence and disbelieved all the others. I don't think that would do so the evidence is insufficient here to show that there would have been victory for his side of the fight.

Arkansas law does not require expert testimony to prove the likelihood of a different outcome in the underlying stock evaluation suit.[4] Under Arkansas law, the

---

[4]We also note that both §§ 4-27-1328 and 4-27-1330 of the Arkansas Code Annotated replaced and repealed § 64-707 of the 1980 Arkansas Statutes. Section 64-707 was first enacted in 1965 and had almost the exact same language. *See* Ark. Stat. Ann. § 64-707 (repealed 1987) ("If a shareholder of a corporation which is a party to a merger or consolidation shall file with such corporation . . . a written objection to such plan of merger or consolidation, and shall not vote in favor thereof . . . such shareholder, within ten [10] days after the date on which the vote was taken, . . . shall make written demand on the surviving or new corporation . . . for payment of the fair value of his shares"). Unlike § 4-27-1330, § 64-707 required the dissenting shareholder to file a petition asking for a finding and determination of the fair value

term "fair value" is recognized as also referring to "value," "fair cash value," "market value," and "full market value." *Gen. Sec. Corp. v. Watson*, 477 S.W.2d 461, 462, n.2 (Ark. 1972) (discussing "fair value" under shareholder's dissenter's suit under § 64-707). Arkansas also recognizes that "there is no set formula to determine the 'fair cash value' of stock."[5] *Id.* (citing *Victor Broad. Co., Inc. v. Mahurin*, 365 S.W.2d 265 (Ark.

---

of his shares. *See id.* ("[i]f within such period of thirty [30] days the shareholder and the surviving . . . corporation do not so agree, the dissenting shareholder may, within sixty [60] days after the expiration of the thirty-day period, file a petition . . . asking for a finding and determination of the fair value of such shares"). Therefore any argument that §§ 4-27-1328 and 4-27-1330 are new or novel law and thus require expert testimony for its interpretation is disingenuous. *See generally* Timothy D. Brewer, *An Overview of the 1987 Arkansas Business Corporation Act*, 10 U. Ark. L.R. L. Rev. 431, 453–57 (1987) (comparison of shareholder dissenter's rights under the 1965 Act and the 1987 Act); Mary Elizabeth Matthews, *A Statutory Primer: The Arkansas Business Corporation Act of 1987*, 1987 Ark. L. Notes 81, 84–85 (1987) (same).

[5]On this issue, the Arkansas Supreme Court has reasoned:

The problem of finding the fair value of stock is a special problem in every particular instance. Since the dissentient will not unite with the majority, the value of his stock should not be affected by a corporate change in which he refused to participate, whether the result be appreciation or depreciation, and this the statute recognizes and eliminates but otherwise affords no express criterion of fair value. . . . The owner of shares of stock in a corporation whose legal existence is at an end would be entitled to receive the aliquot proportion which the number of shares held would be entitled to receive in the distribution of the net amount of the corporate funds in which his particular kind of stock would be entitled to share. Thus, by an ascertainment of all the assets and liabilities of the corporation, the intrinsic value of the stock, and not merely its market value, when traded in by the public, would be determined. If the dissenting owner received this amount, so ascertained, he would receive the fair value of his stock.

-12-

1963)). Relying on cases from other jurisdictions, Arkansas has examined the following when determining fair value of stock: "asset value, earnings, dividends, management and '[e]very relevant fact and circumstance which enters into the value of the corporate property and which reflects itself in the worth of corporate stock.'" *Gen. Sec. Corp.*, 477 S.W.2d at 463 (citing *Phelps v. Watson-Stillman Co.*, 293 S.W.2d 429 (Mo. 1956)). Moreover, the Arkansas Supreme Court has held that a stock broker hired to value the shares of stock, and who actually did cause to be made an evaluation of the shares of stock, was a qualified witness to give sufficient evidence on the fair value of stock. *Gen. Sec. Corp.*, 477 S.W.2d at 464.

The district court also misread *Barnes* and *Vanderford*, neither of which required expert testimony to prove the proximate cause element of a legal malpractice action. In *Barnes*, the Arkansas Supreme Court did not hold that expert testimony was required to prove whether the outcome of the underlying case would have been different, rather expert testimony was required to establish the applicable standard of practice of an attorney in Arkansas for purposes of legal malpractice.[6] *See Barnes*, 95 S.W.3d at 749. The issue of expert evidence was never raised in *Vanderford*, and we affirmed summary judgment on the basis that the malpractice plaintiff failed to present any evidence that the outcome of his action would have been different but for the alleged malpractice. *Vanderford*, 39 F.3d at 211–12. As we explained in *Justice v. Carter*, 972 F.2d 951, 957–58 (8th Cir. 1992), "[a]lthough the issue at hand in the malpractice case is a determination of the outcome of the underlying . . . case, the jury

---

*Gen. Sec. Corp.*, 477 S.W.2d at 462–63 (citing *Am. Gen. Corp. v. Camp*, 190 A. 225 (Md. 1937)).

[6]Appellants in *Barnes* did argue on appeal that expert testimony was erroneously allowed to determine whether a dismissal in the underlying suit was proper, however, the court did not rule on this issue because Appellants failed to properly preserve it at the trial court. *Barnes*, 491 S.W.3d 748.

-13-

in the malpractice case is permitted to decide this by substituting its judgment for the judgment of the factfinder, be it jury or judge, in the earlier case."

In its case in chief, SE Timber presented the video deposition of Brown, who was engaged to make a value of SE Timber's stock before the merger. Brown testified to the facts and circumstances surrounding the merger, including the fact that he was hired to analyze what would be a fair price for all First Land and Timber's timberland and bank stock. Brown testified that the fair value of the stock of First Land and Timber at the time it agreed to sell it was no more than $65 million. Brown also testified that First Land and Timber's directors accepted SE Timber's $65 million offer because it was the best offer. According to Brown, there was no basis for Pictet's claim that the acquired stock was worth $88 million. Brown's testimony was sufficient evidence of the fair value of the shares of First Land and Timber's stock. Accordingly, judgment as a matter of law was improper.

## III. *Conclusion*

For the reasons stated above, we reverse and remand for a new trial consistent with the views expressed in this opinion.

BYE, Circuit Judge, concurring in part and dissenting in part.

I agree the district court improperly granted judgment as a matter of law in favor of Benham with respect to both liability and damages, and I concur in the Court's decision to reverse and remand for a new trial. I also agree the district court abused its discretion when, on the grounds Owen lacked the experience or education necessary to testify in this case regarding the standard of care required by a lawyer practicing in Arkansas, it excluded the testimony of SE Timber's legal expert, Charles Owen.

I do disagree, however, with the Court's failure to address whether the legal malpractice involved in this case fits within the common-knowledge exception, an issue the Court states it need not address after determining the district court erred in excluding Owen's testimony. In my view, the one (declining to address the common-knowledge exception) does not necessarily follow from the other (deciding the expert testimony issue). To the contrary, I view it as unnecessary to decide whether the district court erroneously excluded Owen's testimony if, in fact, the malpractice was so obvious expert testimony was unnecessary. By remanding for a new trial on both liability and damages, we are implicitly indicating there is a genuine issue of fact with respect to whether the conduct in this case fell below the applicable standard of care. Because there are no genuine issues of material fact on such issue, I believe SE Timber should be saved the expense of a second trial on liability. I would, instead, remand with instructions to enter judgment as a matter of law in SE Timber's favor on the issue of liability, and limit the scope of the second trial to the issue whether the legal malpractice caused SE Timber any damage.

There is no dispute lawyer Benham missed the applicable statutory deadline for filing a fair valuation suit. As the Court notes, SE Timber lost its fair valuation suit because it failed to file such timely. The district court presiding over the valuation suit specifically held Pictet's October 30, 1998, letter triggered SE Timber's obligation to file suit within 60 days:

> Pictet complied with § 1328 in its October 30, 1998 letter by demanding payment of Pictet's own estimated fair value of its shares . . .. According to § 1330, [SE Timber] had sixty (60) days from October 30, 1998, to commence a proceeding to resolve Pictet's claim. [SE Timber] did not commence this proceeding until March 15, 1999, two and one-half months late. . . . To summarize, [SE Timber] clearly failed to pay Pictet as required by the statute under § 1325, and clearly failed to commence a timely judicial proceeding under § 1330, the consequence of which is that [SE Timber] must pay Pictet the amount it demanded on October 30, 1998, which is $5,130,752.00, plus interest.

-15-

App. at 149-50.

The district court presiding over the fair valuation suit also noted the applicable statutory procedure "is simple and straightforward." App. at 145. I agree. The Arkansas Business Corporation Act of 1987 (the Act), Ark. Code tit. 4, ch. 27, sets forth in a very straightforward manner the step-by-step procedure a dissenting shareholder must undertake to assert dissenter's rights under the Act. Likewise, the steps a corporation must consider in responding to a shareholder exercising dissenter's rights are set forth in a straightforward manner. Up until SE Timber failed to respond timely to Pictet's payment demands, both SE Timber and Pictet precisely followed the procedures required by the Act.

First, SE Timber informed Pictet a vote on the merger would take place at a special shareholder's meeting, and notified Pictet of its dissenter's rights.[7] In response, Pictet notified SE Timber it would dissent from the merger and preserved its dissenter's rights.[8] Benham next provided notification of the approved merger and advised Pictet it should make a demand for payment and deposit the certificates for the dissenting shares.[9] Pictet timely certified it was the beneficial owner of 6,000

---

[7]"If proposed corporate action creating dissenters' rights . . . is submitted to a vote at a shareholders' meeting, the meeting notice must state that shareholders are or may be entitled to assert dissenters' rights under this chapter and be accompanied by a copy of this chapter." Ark. Code Ann. § 4-27-1321(a).

[8]"If proposed corporate action creating dissenters' rights . . . is submitted to a vote at a shareholders' meeting, a shareholder who wishes to assert dissenters' rights (1) must deliver to the corporation before the vote is taken written notice of his intent to demand payment for his shares if the proposed action is effectuated and (2) must not vote his shares in favor of the proposed action." Ark. Code Ann. § 4-27-1321(a).

[9]"[T]he corporation shall deliver a written dissenters' notice to all shareholders who satisfied the requirements of § 4-27-1321 [stating] where the payment demand

-16-

shares of First Land stock, demanded payment of the fair value of the shares, and deposited its share certificates.[10]

Upon receipt of Pictet's payment demand, the Act required SE Timber to either a) estimate the fair value of the stock and pay Pictet for its shares within sixty days, or b) return the share certificates to Pictet.[11] SE Timber failed to pay Pictet within 60 days, triggering Pictet's statutory right to make its own fair value estimate.[12]

Pictet's October 30 letter specifically referred to the fact that "[s]ixty days have now elapsed since the date set out for demanding payment contained in your letter to us [and] we have not received a payment for our shares nor the estimate by the

must be sent and where and when certificates for certificated shares must be deposited [and setting] a date by which the corporation must receive the payment demand." Ark. Code Ann. § 4-27-1322.

[10]"A shareholder sent a dissenters' notice described in § 4-27-1322 must demand payment, certify whether he acquired beneficial ownership of the shares before the date required to be set forth in the dissenters' notice . . . and deposit his certificates in accordance with the terms of the notice." Ark. Code Ann. § 4-27-1323(a).

[11]"[A]s soon as the proposed corporate action is taken, or upon receipt of a payment demand, the corporation shall pay each dissenter who complied with § 4-27-1323 the amount the corporation estimates to be the fair value of his shares, plus accrued interest." Ark Code Ann. § 4-27-1325(a). "If the corporation does not take the proposed action within sixty (60) days after the date set for demanding payment and depositing share certificates, the corporation shall return the deposited certificates and release the transfer restrictions imposed on uncertificated shares." Id. at § 4-27-1326(a).

[12]"A dissenter may notify the corporation in writing of his own estimate of the fair value of his shares and amount of interest due, and demand payment of his estimate . . . [if] the corporation fails to make payment under § 4-27-1325 within sixty (60) days after the date set for demanding payment." Ark. Code Ann. § 4-27-1328.

corporation."   The October 30 letter also specifically referred to Pictet's statutory right to make its own fair value estimate under § 4-27-1328, and set forth a fair value estimate of $88 million.  Thus, there is simply no dispute the October 30 letter triggered the 60-day deadline for SE Timber's fair valuation suit,[13] and SE Timber's concomitant obligation to pay Pictet the full amount of its estimate if no such suit was filed.[14]

Indeed, the undisputed facts in this case establish lawyer Benham knew the October 30 letter triggered the 60-day deadline for filing a fair valuation suit.  As the Court notes, Pictet sent a second demand letter to SE Timber on January 15, 1999, which was substantively identical to the October 30 letter.  After receiving the January 15 letter, Benham advised SE Timber the January 15 letter triggered the 60-day rule under § 4-27-1330.  It necessarily follows, then, if Benham knew the January 15 letter triggered the 60-day deadline, he knew or should have known the *substantively identical* October 30 letter had already triggered the deadline.  Thus, in this particular case, I simply cannot determine there is any genuine issues of material fact for the jury concerning the reasonableness of Benham's conduct in missing the statutory deadline.  Although I take no great joy in noting this, missing a statutory deadline is the classic example of when a lawyer's lack of care and skill is so obvious the trier of fact can find negligence as a matter of common knowledge.  See Kaempe v. Myers, 367 F.3d 958, 966 (D.C. Cir. 2004) ("Examples of attorney actions (or failures to act) that fall within the 'common knowledge' exception include . . . allowing the statute of limitations to run on a client's claim[.]"); Williams v.

_____

[13]"If a demand for payment under § 4-27-1328 remains unsettled, the corporation shall commence a proceeding within sixty (60) days after receiving the payment demand and petition the court to determine the fair value of the shares and accrued interest."  Ark. Code Ann. § 4-27-1330.

[14]"If the corporation does not commence the proceeding within the sixty-day period, it shall pay each dissenter whose demand remains unsettled the amount demanded." Ark Code Ann. § 4-27-1330.

-18-

Callaghan, 938 F.Supp. 46, 50 (D.D.C. 1996) ("Allowing a statute of limitations to run is an example of the type of conduct by an attorney which can be found negligent as a matter of common knowledge."); O'Neil v. Bergan, 452 A.2d 337, 342 (D.C. 1982) (same); Barth v. Reagan, 546 N.E.2d 87, 90-91 (Ill. App. Ct. 1989) ("Expert testimony has been held to be unnecessary in Illinois . . . in cases where the attorney has failed to comply with the statute of limitations."); Michael A. DiSabatino, J.D., ADMISSIBILITY AND NECESSITY OF EXPERT EVIDENCE AS TO STANDARDS OF PRACTICE AND NEGLIGENCE IN MALPRACTICE ACTION AGAINST ATTORNEY 14 A.L.R.4th 170 at § 5 (1982) (discussing cases in which expert testimony was or was not required where alleged malpractice stemmed from attorney's failure to file a case within a statutory deadline).

I also find no joy in discussing the obviousness of the malpractice committed in this case. I do not believe, however, the parties or the district court should suffer the unnecessary expense of a second trial on the issue of liability to spare this appellate court from the displeasure of doing so. As a consequence, I respectfully dissent from the Court's failure to address whether the malpractice involved in this case fits within the common-knowledge exception. I would reverse and remand for a trial solely on the issue whether the malpractice caused SE Timber any damages.

_____