## DANIELSON *et al. v.* SKIDMORE *et al.*

### Opinion delivered October 23, 1916.

1. CONTRACTS—EXCHANGE OF LAND—FALSE REPRESENTATIONS—REMEDIES.—A person who has been induced to enter into a contract for the purchase or exchange of lands by false representations concerning the quantity or quality, may have either of the following remedies: (*a*) he may rescind the contract and by returning or offering to return the property purchased within a reasonable time, entitle himself to recover whatever he had paid upon the contract; (*b*) he may elect to retain the property and sue for the damages he has sustained by reason of the false and fraudulent representations, and in this event the measure of his damages would be the difference between the real value of the property in its true condition and the price at which he purchased it; or (*c*) to avoid circuity of action and a multiplicity of suits, he may plead such damages in an action for the purchase money, and is entitled to have the same recouped from the price he agreed to pay.

2. EXCHANGE OF LANDS—FRAUD—ACTION FOR DAMAGES—LIMITATIONS.—Where plaintiff was induced to exchange lands with the defendant because of the latter's false representations, plaintiff may bring an action for damages at any time within the period of time allowed by law, but the measure of damages becomes fixed when plaintiff first discovers the fraud which he claims was perpetrated upon him.

3. CONTRACTS—EXCHANGE OF LAND—FRAUD—ACTION TO RESCIND—PROPER FORUM.—The proper forum for an action for damages, when plaintiff was induced by fraud to exchange lands with defendant, is in the circuit court, but when the same was tried in chancery without objection, the objection to jurisdiction will be deemed to have been waived.

Appeal from Fulton Chancery Court; *C. D. Frierson,* Chancellor; affirmed.

*Townsend & Smith,* of Kansas City, Mo., for appellants.

Counsel review the evidence and urge that there is not a preponderance in appellees' favor, but rather

that the preponderance of the evidence is against the decree of the chancellor, citing 41 Ark. 292; 76 Ark. 282; *Id.* 292; 42 Ark. 522; 114 Ark. 121; 55 Ark. 116.

To justify the chancery court in cancelling a contract on the ground of misrepresentations, there must be clear and satisfactory evidence that there was such misrepresentation as to a material fact which was relied upon by the plaintiff and that he was induced thereby to enter into the contract, 82 Ark. 20-24; 11 Ark. 66; 19 Ark. 582; 47 Ark. 164; 101 Ark. 608. See also 2 Am. St. Rep. 345-351; 81 *Id.* 374; 95 Am. Dec. 628; 77 Ark. 355; 11 Ark. 378. Where the means of information are open to both parties alike, they will be presumed to have informed themselves, and the party failing to do so must abide the consequences of his own carelessness. 31 Ark. 170; 30 Ark. 686; 26 Ark. 28; 11 Ark. 58; 19 Ark. 522; 95 Ark. 523; *Id.* 131.

Skidmore used no diligence to inform himself. 46 Ark. 247; 38 Ark. 334.

*Lehman Kay*, for appellees.

The preponderance of the evidence sustains the decree. Citation of cases in its support not necessary.

HART, J. On the 12th day of September, 1914, appellees instituted this action in the chancery court against appellants to recover damages on account of certain false representations of appellants to appellees in the exchange of lands between the parties. In March, 1912, appellee, Effie Skidmore, was the owner of a house and lot in Kansas City, Missouri, and appellant Emma Danielson was the owner of 160 acres of land in Fulton County, Arkansas. Both parties resided with their husbands in Kansas City, Missouri. On the 25th day of March, 1912, the parties entered into a contract for the exchange of their lands and appellee, Effie Skidmore, agreed to pay $600 in addition. The parties made deeds to each other to the lands exchanged and in addition, Effie Skidmore executed a mortgage to appellant, Emma Eva E. Danielson, on the Fulton County lands

to secure the payment of the $600. The husband of each of the parties acted as agent for his wife in making the trade.

W. H. Skidmore testified substantially as follows I represented my wife in making the exchange of lands: At the time the exchange of lands was made the value of the house and lot owned by my wife in Kansas City was between $3,000 and $3,500. The size of the lot was forty by one hundred and twenty feet. The house on the lot was a two-story, seven room, modern house. It was plastered and papered on the inside and the woodwork was painted both on the inside and on the outside. Neither my wife nor myself had ever seen the Fulton County property before we traded for it. The husband of Mrs. Danielson represented to me that there was a good four room cottage and log house on it and a good orchard and between fifty and sixty acres in cultivation. That there were eighty acres of it under fence and that it would produce as much wheat, corn and oats per acre as any Missouri or Illinois farm. That all of the land could be put in cultivation except twenty or twenty-five acres which contained valuable minerals. That the merchantable timber on the land was worth more than he was asking for the land and that it was only two hour's drive from Mammoth Spring and that the land was smooth and clear of rocks. I traded for this land for my wife upon these representations because I thought they were true. The representations turned out to be false. The land and improvements were only worth $600. There is no valuable timber on the land. I made a crop on the land in the years 1913 and 1914 and there was almost a total crop failure.

Another witness testified that he lived close to the Fulton County land and had known it for twenty years, that a fair market value of the land in 1912, was $350.00.

Another witness who had a lease on the land at the time the exchange was made, testified that Mr. Danielson asked him if he would write any prospective

purchaser that there were six hundred and forty acres of land near this that recently sold for $10,000 and that the Danielson land was as good or better than it. That witness refused to agree to do this, because such was not the fact.

On the other hand Danielson testified that he told Skidmore that the Fulton land was a typical hilly, gravelly quarter section. That he had seen the land but once and that it was lacking in soil, but that they seemed to raise some cotton and other crops on it. That Skidmore told him that he had been through that section of Fulton county before and was familiar with the character of the soil there. That he seemed to know all about the soil in that part of Arkansas and made the exchange for the land on his own judgment. Danielson also stated that there was a mortgage of $1,100 on the house and lot in Kansas City which fell due soon after the exchange was made and that he tried to renew the mortgage but failed to do so. That he then tried to obtain a new mortgage but was unable to do so because the house was in such a dilapidated condition. He also testified that there was a great hole in the corner of the yard which required filling up and that he was at once put to great expense in repairing the house and filling up this hole. Danielson was corroborated in his testimony by a real estate agent who knew both parties. Another real estate agent testified that the house and lot in Kansas City was worth from $1,700 to $1,800 in 1912. Another person who bought the house and lot from Danielson in 1914, said it was then worth $2,500 or $2,800 and was in first-class repair. He stated that he would not take $2,500 cash for it.

The chancellor found in favor of appellees and the case is here on appeal.

(1) A person who has been induced to enter into a contract for the purchase or exchange of lands by false representations concerning the quantity or quality, may have either of these remedies which he conceives most to his interest to adopt. He may rescind the contract and by returning or offering to return the

property purchased within a reasonable time entitle himself to recover whatever he had paid upon the contract. Again he may elect to retain the property and sue for the damages he has sustained by reason of the false and fraudulent representations, and in this event the measure of his damages would be the difference between the real value of the property in its true condition and the price at which he purchased it. Lastly to avoid circuity of action and a multiplicity of suits, he may plead such damages in an action for the purchase money and is entitled to have the same recouped from the price he agreed to pay. *Matlock* v. *Reppy*, 47 Ark. 148; *Ft. Smith Lumber Co.* v. *Baker*, 123 Ark. 275, 185 S. W. 277.

(2) In the present case appellees elected to sue for damages but waited two years after the exchange of lands was made before bringing suit. They had the right to bring their action at any time within the period of time allowed by law but their measures of damages were fixed when they first discovered the fraud which they claimed had been perpetrated upon them. *Ft. Smith Lumber Co.* v. *Baker, supra.*

(3) The proper forum for such an action was in the circuit court, but no objection was made to the chancery court trying the case and any objection which might have been made on that account will be deemed to have been waived and need not be considered on appeal. The only issue then raised by the appeal is whether or not the findings of fact made by the chancellor are sustained by the evidence.

It is well settled in this state that the findings of fact made by a chancellor will not be disturbed on appeal unless they are against a preponderance of the evidence. Tested by this rule we think the decision of the chancellor should be upheld. Practically all the testimony, and certainly a preponderance of it, shows that the Fulton county land was a rocky hillside farm about five hours drive, instead of two hours, from the town of Mammoth Spring. That it was of very little value and at the time the exchange was

made neither Skidmore nor his wife had seen the land. It is true Danielson testified that Skidmore told him that he had been through Fulton County and knew the character of land there. Skidmore denied this, however, and he is corroborated by other circumstances in evidence. He had a right to rely upon the representations of Danielson as to the quality of the soil, and according to his testimony he did rely upon them.

While Danielson testified that the Kansas City property was in a dilapidated condition he is flatly contradicted by Skidmore who testified that the property was in first-class condition and had on it a house with modern improvements. He stated that the hole in the lot could be filled up with dirt taken from the adjoining property at no cost when that property was graded. He is corroborated by the person who purchased the property from Danielson. He stated that the property was in good repair when he purchased it, and that he would not consider a cash offer of $2,500 for it.

We think that when all the facts and circumstances adduced in evidence are read and considered in the light of each other, it cannot be said that the chancellor erred in finding for appellees.

The decree will therefore be affirmed.