H.L. "Pete" SMITH *v.* EASTGATE PROPERTIES,
INC., Richard Stofer, and Henry Allen

92-692                                         849 S.W.2d 504

Supreme Court of Arkansas
Opinion delivered March 22, 1993
[Rehearing denied May 3, 1993.]

356

*Wright, Lindsey & Jennings*, by: *John R. Tisdale* and *Charles L. Schlumberger*, for appellant.

*Eudox Patterson*, for appellees.

DAVID NEWBERN, Justice. This case involves the remedies to be afforded a dissenting shareholder of a closely held corporation when a majority of the shareholders vote to sell substantially all the corporate assets. The appellant, H.L. "Pete" Smith, argues the Chancellor erred by substituting the equitable remedy of foreclosure for the legal remedy of determining the fair value of his shares under Ark. Code Ann. § 4-26-904(f)(2)(A) (Repl. 1991) when acting pursuant to the clean-up doctrine. He also contends the Chancellor should have ruled on his shareholder's derivative claim brought on the corporation's behalf under Ark. Code Ann. § 4-26-811(a)(3) (Repl. 1991). We find no error and affirm.

Smith was the sole shareholder of Pete Smith Realty, Incorporated. On May 24, 1988, the appellees, Richard Stofer and Henry Allen loaned $475,000 to financially troubled Pete Smith Realty secured by a deed of trust on all real property owned by the corporation. A few days after the transaction, Stofer, Allen, J.E. Johnston, and Charles Regan purchased two-thirds of the corporate stock from Smith. Stofer later purchased Regan's shares. The corporate name was changed to Eastgate Properties,

Incorporated. Allen and Stofer were directors, officers, and majority shareholders of Eastgate.

In July of 1988, Stofer and Allen loaned Eastgate approximately $38,000 which was secured by the deed of trust under a future advances provision. Eastgate borrowed $200,000 of additional working capital from One National Bank which was also secured by a mortgage lien on the corporation's real property. Stofer, Smith, and Allen were individually liable with Eastgate on the debt to One National Bank.

The original $475,000 loan from Stofer and Allen was due November 24, 1988, and well into default on March 12, 1991, when a special meeting of the stockholders, directors, and officers of Eastgate was held. During this meeting, a majority of the shareholders (Stofer, Allen, and Johnston) voted to convey the real property owned by Eastgate to Stofer and Allen in satisfaction of the debt owed them. Smith objected to the transfer prior to the meeting and voted his shares in opposition to the decision. The property was conveyed to Stofer and Allen by corporate warranty deed and bill of sale. On March 20, 1991, Smith made written demand on Eastgate for the fair value of his shares pursuant to Section 4-26-904(f)(2)(A). Stofer and Allen maintained Smith's stock was worthless because Eastgate's debts exceeded the value of its assets.

In May of 1991, Stofer and Allen requested an *ex parte* temporary restraining order in Garland County Chancery Court prohibiting Smith from removing fixtures from the real property which had been conveyed to them by Eastgate. The Chancellor granted the temporary relief on May 31, 1991. On July 19, 1991, Smith responded to the petition and claimed ownership of the fixtures by virtue of a 1975 agreement between Smith Farms and Pete Smith Realty. Smith Farms was also owned by Smith. Smith requested that the temporary restraining order be lifted and Allen and Stofer's claim for permanent injunctive relief be dismissed.

Smith affirmatively contended in Chancery Court that Stofer and Allen breached a fiduciary duty of care and loyalty owed to Eastgate and its minority shareholders by transferring corporate assets to themselves for substantially less than their fair market value. Smith alleged the real property owned by Eastgate

was worth over $2,000,000 but was transferred to Stofer and Allen for only $475,000. Smith also claimed Stofer and Allen's purchase of the assets was a taking of a corporate opportunity in which Eastgate and its shareholders had a profit expectancy. As a proximate result of Stofer and Allen's actions, Smith alleged he suffered damages of $300,000, which represented 25% of the estimated fair value of Eastgate's assets. Smith also demanded $1,215.61 in compensation for the value of his engineering services rendered to Eastgate.

On July 5, 1991, Smith filed a complaint in Garland County Circuit Court against Stofer, Allen, and Eastgate seeking a determination of the fair value of his shares under Section 4-26-904(f)(2)(A). The complaint alleged the same basic causes of action as the counterclaims filed in Chancery Court. Because Eastgate had no assets to pay a judgment, Smith sought to hold Stofer and Allen jointly and severally liable for the value of his shares under Section 4-26-811(a)(3). With respect to his claim for services rendered, Smith claimed he was suing in his capacity as a shareholder, and thus the case was a shareholder's derivative suit brought on Eastgate's behalf. His theory was that Stofer and Allen had failed to make provisions for paying Eastgate's debts, so they were liable to Eastgate and Eastgate to him.

Smith immediately moved to transfer his claims against Stofer, Allen, and Eastgate to Chancery Court because the same issues were pending in the action there. Smith stated he filed his petition in Circuit Court to comply with Section 4-26-904(f)(2)(A) requiring such actions to be brought there. Having filed in Circuit Court as required by the Statute, Smith asked that his claims be transferred to Chancery Court which could decide them under the clean-up doctrine in order to avoid a multiplicity of suits and the potential for inconsistent decisions. The Circuit Court granted the motion without objection from Stofer and Allen.

The case went to trial on December 18, 1991. No testimony has been included in the record as designated by Smith for presentation here, and we have only the Chancellor's findings to consider. The Chancellor recognized most of the evidence at trial dealt with the appraised value of Eastgate's real property which ranged from $1,600,000 to $704,000. The Chancellor ruled the

most appropriate remedy to end the controversy was to set aside the conveyance from Eastgate to Stofer and Allen and order the Chancery Clerk to conduct a judicial sale of Eastgate's real property. The Chancellor acknowledged the parties did not request this remedy but believed he could fashion any reasonable relief justified by the proof.

The property would be sold subject to One National Bank's $200,000 loan, and the net proceeds of the sale would be paid to Stofer and Allen to apply to their loans made to Eastgate. Any proceeds in excess of the principal and interest owed to Stofer and Allen would be returned to Eastgate. Presumably, Smith would be entitled to share in the excess proceeds in proportion to his ownership interest in Eastgate. The Chancellor stated this remedy would place the parties in the same position as if Stofer and Allen had foreclosed on their mortgage.

The Chancellor further held the sale would render moot Smith's claim against Eastgate, Stofer, and Allen for allegedly breaching a fiduciary duty by transferring assets for less than fair value, and Smith's claim for recovery as a minority shareholder. Smith was awarded a $1,215.61 judgment against Eastgate for engineering services rendered.

Smith moved to amend the findings, arguing the Chancellor incorrectly substituted the equitable remedy of foreclosure for the legal remedy of determining the fair value of his shares. Smith alleged the foreclosure sale would not result in a fair value given to his shares as these sales were commonly viewed as "liquidation sales" where property is sold for a fraction of its value. The motion was denied. Smith moved to supplement the record with the Clerk's report of sale showing Stofer and Allen purchased substantially all of Eastgate's real property at the foreclosure sale for $450,000.

### 1. Equitable remedies

Smith argues the Chancellor was without authority to substitute the equitable remedy of foreclosure for the legal remedy of determining the fair value of his shares under Section 4-26-904(f)(2)(A). He contends a Chancellor must apply legal remedies when acting pursuant to the clean-up doctrine.

We recognize the legal right of a dissenting share-

holder to obtain a determination of the fair value of his shares under Section 4-26-904(f)(2)(A) when a majority of the shareholders vote to sell substantially all the corporate assets. There is no dispute that Smith complied with the Statute by objecting to the transfer prior to the meeting, by not voting in favor of it, and by making a timely written demand on Eastgate for the fair value of his shares. Ark. Code Ann. § 4-26-904(a) (Repl. 1991). The Statute is silent on the method for determining "fair value." We have stated there is no set formula or standard for determining fair value. *General Securities Corp.* v. *Watson*, 251 Ark. 1066, 477 S.W.2d 461 (1972).

By setting the sale to Stofer and Allen aside, the Chancellor avoided applicability of § 4-26-904(f)(2)(A). To support his argument that the Chancellor was without authority to set aside the sale and impose the equitable remedy of foreclosure, Smith relies almost exclusively on the maxim "equity follows the law" as cited in *Beebe School Dist.* v. *National Supply Co.*, 280 Ark. 340, 658 S.W.2d 372 (1983). In the *Beebe* case, National Supply argued this Court should not follow a decision reached in a law case because the case on appeal arose in equity. We disagreed, stating "equity follows the law is strictly applicable whenever the rights of the parties are clearly defined and established by law." The primary basis for our decision, however, was the fact that the same result had been reached in an appeal from a chancery court.

It might be true that equity follows the law in the sense of applying to equitable estates and interests the same rules by which common law legal estates are governed. *Pomeroy's Equity Jurisprudence*, § 426 (5th ed. 1941). We cannot, however, interpret the *Beebe* case to mean equity must disregard equitable remedies in favor of legal remedies when acting pursuant to the clean-up doctrine. The fact that in some instances equity follows the same rules as are applied to legal estates does not mean equity must apply the same remedies.

We believe this statement to be particularly appropriate:

> [O]ne large division of the equity jurisprudence lies completely outside of the law; it is additional to the law; and while it leaves the law concerning the same subject-matter in full force and efficacy, its doctrines and rules are constructed without any reference to the corresponding

doctrines and rules of the law. Another division of equity jurisprudence is directly opposed to the law which applies to the same subject-matter; its doctrines and rules are so contrary to those of the law, that when they are put into operation the analogous legal doctrines and rules are displaced and nullified. As these conclusions cannot be questioned, it is plain that the maxim, Equity follows the law, is very partial and limited in its application, and cannot, like all the other maxims discussed in this chapter, be regarded as a general principle.

*Pomeroy's Equity Jurisprudence*, § 427 (5th ed. 1941).

■ In setting aside the conveyance and ordering the assets sold at foreclosure, the Chancellor relied on *Whitten Developments, Inc.* v. *Agee*, 256 Ark. 968, 511 S.W.2d 466 (1974), which states the general rule that "a court of equity may fashion any reasonable remedy justified by the proof." *See also Roe* v. *Dietrich*, 310 Ark. 54, 835 S.W.2d 289 (1992); *Keith* v. *Barrow-Hicks Ext. Imp. Dist,* 275 Ark. 28, 626 S.W.2d 951 (1982). Smith argues this rule is applicable only when a court of equity substitutes one equitable remedy for another. We decline to say the rule is so narrow.

■ In the *Whitten* case, we stated even though Agee did not request foreclosure, he was, in view of his prayer for general relief, entitled to any relief in equity justified upon proof of the facts alleged. It is undisputed that in this case Smith invoked the jurisdiction of Chancery Court and there requested "all other just and proper relief." The Chancellor acted within his authority in determining a foreclosure sale was the best method for determining the value of Smith's shares and ending the litigation.

Smith argues the foreclosure sale guaranteed he would not receive a fair value for his shares because foreclosure sales bring only a fraction of the true value of the assets sold. He supports his argument with the fact that the price brought at the foreclosure sale, from Stofer's and Allen's $450,000 bid, was substantially less than the lowest appraised value of the property, $704,000.

■■ We refuse to take judicial notice that foreclosure sales always result in property selling for less than market value. Furthermore, we cannot determine from the record whether this

specific foreclosure sale brought a lower than market value price. We do know that Eastgate owed Stofer and Allen $513,000, and it owed the Bank $200,000 for a total indebtedness secured by the property in question of at least $713,000, which was well over the lower estimate of the property's value. Smith has failed to demonstrate that the fair market value of the property, when considering the interests of Stofer, Allen, and One National Bank, was substantially higher than the price brought at the foreclosure sale.

## 2. Shareholder's derivative suit

Smith's second point is that the Chancellor should have ruled on his shareholder's derivative claim brought under Section 4-26-811(3). The purpose of the claim was to impose joint and several liability against Stofer and Allen for any judgment Eastgate might be required to pay. The Chancellor determined his decision to set aside the transfer to Stofer and Allen rendered this issue moot.

Section 4-26-811(3) provides

> The directors of a corporation who vote for or assent to any distribution of assets of a corporation to its shareholders during the liquidation of the corporation without the payment and discharge of, or making adequate provision for, all known debts, obligations, and liabilities of the corporation shall be jointly and severally liable to the corporation for the value of the assets which are distributed, to the extent that the debts, obligations, and liabilities of the corporation are not thereafter paid and discharged;

Although Stofer and Allen voted to convey Eastgate's assets to themselves during a liquidation without first making provision for other creditors, the Chancellor set aside the transfer and ordered the assets sold. The proceeds of the sale would be used to pay other creditors, presumably in order of their priority. We agree that the Chancellor's action rendered the Statute inapplicable. A decision would have no practical legal effect upon an existing legal controversy. *Frisby* v. *Strong School Dist.* 282 Ark. 81, 666 S.W.2d 391 (1984).

Affirmed.

Hays, J., dissents.

Steele Hays, Justice, dissenting. Without lessening the broad powers of a chancellor to order whatever remedy may be in keeping with the proof, when the law affords specific statutory relief, fashioned for the protection of minority stockholders, as I see it those affected may claim that relief irrespective of whether the case is tried in law or in equity. I would remand the case for a determination by the chancellor as to the fair value, if any, of appellant's stock.