2011 Ark. App. 426

MARX REAL ESTATE INVEST-
MENTS, LLC; Margie Marx; and Al-
lan Marx, Appellants/Cross–Appellees

v.

Dr. Victor COLOSO and Regina
Coloso, Appellees/Cross–
Appellants

Envision Real Estate Group,
LLC, Cross–Appellee.

No. CA 09–1363.

Court of Appeals of Arkansas.

June 15, 2011.

Matthew Richard House, Little Rock, Jason Trevor Browning and Emily Milholen Reynolds, Fort Smith, for appellants.

Glenn Eugene Kelley, Rogers, for appellees.

LARRY D. VAUGHT, Chief Judge.

This appeal involves questions of the election of remedies and the right to a jury trial. After discharging the jury, the Sebastian County Circuit Court found that it could not rescind the real estate contract between appellants Marx Real Estate Investments, LLC (MREI), Margie Marx, and Allan Marx (collectively with MREI, the Marx defendants), and appellees Dr. Victor Coloso and Regina Coloso, but it awarded the Colosos approximately $56,000 in damages and approximately $51,000 in attorney's fees. The Marx defendants appeal and the Colosos cross-appeal, raising issues concerning the propriety of the circuit court's handling of the Colosos' election of their remedy, the damages awarded to the Colosos, and the award of attorney's fees to the Colosos. The Colosos also argue that the circuit court erred in its dismissal of separate cross-appellee Envision Real Estate Group, LLC, the agent for the Marx defendants. We affirm on direct appeal, affirm on cross-appeal, and deny Envision's motion to dismiss the Colosos' cross-appeal against it.

### Background

On July 30, 2007, MREI purchased a home from Dr. Stephen Nelson for $452,000 and was provided with a real estate disclosure (the Nelson disclosure) regarding the property. The Nelson disclosure stated that there had been water leakage resulting from problems with the veranda tiles, window sills, and insufficient guttering. The statement also said that there had been mildew in the pool room,

but that it was unclear whether there was mold present. MREI began remodeling and making numerous repairs to the property in anticipation of using it as the Marxes' personal residence.

MREI listed the house for sale for $750,000 in September 2007 while remodeling was still ongoing. The listing stated that the home was currently being repaired and that MREI would give a $50,000 remodeling allowance. The Colosos' real estate agent, Sharla Lau, advised them that the property was for sale and made an appointment for them to look at it. The Colosos made four or five visits to the property.

Due to the additional repairs that needed to be performed, the Colosos negotiated a price of $625,000 on October 12, 2007. In connection with the transaction, MREI prepared a real estate disclosure statement regarding the property. MREI later prepared a disclosure ⌊₃form that answered certain questions that the first disclosure statement had left blank. The additional answers stated

> We were told by the previous owners, there was water coming in from the gutters and/or roof. The previous owners fixed the roof and we fixed/cleaned the gutters. The gutters were cleaned/repaired. Since our ownership there have ⸱[sic] been no evidence of any leakage. Mold was on a small section of the living room wall, we bleached it, and put a primer, then we repainted.

The Colosos engaged a property inspector, Lowell Coomer, who provided a report dated October 17, 2007. The summary of Coomer's report suggested that the EIFS siding[1] was installed below grade; that the down spouts were not connected, directing water to the foundation; that there were several cracks in the siding, some of

which had been repaired; that there were high readings of water detected in the vicinity of some of the cracks; and that there were roof-to-wall flashings missing, which protect the siding from water intrusion. Coomer suggested further evaluation and repair by a certified EIFS contractor.

Also at the same time, the Colosos and Lau met with Donnie Mitchum of Cumbie Mitchum Plastering to discuss repairs to the EIFS and the condition of the EIFS. Cumbie Mitchum submitted an estimate of approximately $8000 to correct the problems with the EIFS.

The parties closed on the transaction on November 13, 2007. On December 31, 2007, the Colosos obtained a copy of the disclosure statement prepared by Dr. Nelson. The Colosos ⌊₄later obtained an estimate that the cost of repairing the veranda tiles was $17,500.

The Colosos received a report dated October 12, 2008, after suit had been filed, that disclosed the existence of unacceptably high levels of mold. Among other things, the report recommended an inspection by a certified EIFS contractor, including the testing of sheet rock, and the elimination of all moisture sources. An estimate of the cost of correcting the mold infestation was obtained. The total estimate was $107,623.05.

On January 3, 2008, the Colosos filed suit against the Marx defendants and Envision, seeking equitable rescission of the transaction, or alternatively money damages. The complaint, later twice amended, set forth causes of action for breach of contract, fraud, fraud in the inducement, constructive fraud, negligence, and violation of the Arkansas Deceptive Trade

---

1. EIFS stands for Exterior Insulation and Finishing System and is a type of building exterior-wall cladding system that provides exterior walls with an insulated finished surface and waterproofing in an integrated composite-material system.

Practices Act. The complaint also sought to pierce the corporate veil so as to hold Margie and Allan Marx personally responsible for MREI's actions, and punitive damages.

The Marx defendants made a jury-trial demand, filed an answer, and asserted several affirmative defenses, including comparative fault, failure to mitigate, estoppel, election of inconsistent remedies, waiver of rescission, and failure to state a claim. MREI also filed a counterclaim alleging that it was overcharged for real estate taxes and that the Colosos actually owed MREI approximately $2100.

### Proceedings at Trial

A jury was empaneled to hear the case. At the close of the Colosos' case, the circuit court granted Envision a directed verdict on the claims for fraud, fraud in the inducement, constructive fraud, and violation of the Arkansas Deceptive Trade Practices Act. The court found that any misstatements contained in the disclosure prepared by the Marx defendants were not Envision's misrepresentations. The court denied the motions as to negligence against Envision and on all claims against the Marx defendants. The court required the Colosos to elect between their remedies of rescission or contract damages. The Colosos then elected the remedy of rescission, over objection by the Marx defendants that doing so deprived them of their right to a jury trial. The jury was dismissed and trial continued to the bench.

After considering the parties' posttrial briefs, the circuit court filed its opinion and judgment on May 26, 2009. The court first addressed the Colosos' claims against Envision. The court noted that it had found no authority for the proposition that rescission may be based upon negligence. The court also found that Envision was not a party to the contract and did not prepare the disclosures at issue; instead, it was simply the agent for MREI and the Marxes. The court also found that the evidence did not support a finding that Envision was negligent.

The court then turned to the liability of the Marx defendants. The court considered the discrepancies between the disclosure provided by Dr. Nelson with that provided by MREI and the evidence and concluded that the Marx defendants had made fraudulent misrepresentations. After noting the difficulty in determining the amount of mold attributable to the conduct of the Marx defendants with that caused by the Colosos' failure to follow the recommendations of experts in remediation of the mold problem, the court found that it was impossible for the property to be returned to the Marx defendants in substantially the same condition as it was in when it was sold. The court accordingly found that rescission was not available as a remedy and proceeded to address the Colosos' argument that they should be awarded damages in the event that rescission was unavailable. The court noted the argument by the Marx defendants that the Colosos had elected rescission as their remedy, but held that a court of equity could fashion any remedy justified by the proof. The court concluded that the Colosos were entitled to recover some, but not all, of the costs of correcting the mold infestation because of their failure to take curative actions at little or no cost. The court awarded the cost of repairs to the veranda, $17,500, and one-third of the cost of the mold remediation, $39,074.35, for a total judgment of $56,574.35. The court further found that, by proceeding in equity, the Colosos had waived their right to recover punitive damages against the Marx defendants. The court pierced MREI's corporate veil to hold Margie and Allan Marx personally liable. The court also found in favor of the Colosos on the counterclaim filed by MREI.

On June 25, 2009, the Marx defendants filed their notice of appeal. The Colosos filed their notice of cross-appeal on July 2, 2009.

The Colosos filed a motion seeking attorney's fees of $77,380 and costs of $11,064.68. The court found that the Colosos were entitled to fees pursuant to the real estate contract between the parties. After apportioning one-third of the time to the claims against Envision, the court awarded the Colosos attorney's fees of $51,612.46 and costs of $215. The Marx defendants amended their notice of appeal to appeal from the award of the attorney's fees.

### Standard of Review

In bench trials, the standard of review on appeal is not whether there is substantial evidence to support the finding of the court, but whether the court's findings were clearly erroneous or clearly against the preponderance of the evidence. Ark. R. Civ. P. 52(a); *Cochran v. Bentley,* 369 Ark. 159, 251 S.W.3d 253 (2007). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Cochran,* 369 Ark. at 165, 251 S.W.3d at 259. Disputed facts and determinations of credibility are within the province of the fact-finder. *Id.* at 165, 251 S.W.3d at 259.

### Arguments on Appeal & Cross–Appeal

In this appeal and cross-appeal, the Marx defendants and the Colosos each argue that the circuit court erred in the manner in which the court required the Colosos to elect the remedy of rescission, the circuit court's award of damages, and the circuit court's award of attorney's fees and costs to the Colosos. Therefore, we will consider these arguments together. In addition, the Colosos argue that the circuit court erred in dismissing their claims against Envision.

### Election of Remedies

The Marx defendants argue that the court erred in its handling of the Colosos' election of remedies and denied them their right to a jury trial. The Colosos argue that the circuit court should not have required them to elect their remedy until the court determined if rescission of the contract was available as a remedy.

Under the doctrine of election of remedies, a plaintiff may proceed to trial on multiple theories of recovery for the same injury and may pursue multiple remedies up until the time that the jury is instructed, at which time it must be made clear that the jury is required to choose one or the other. *Regions Bank v. Griffin,* 364 Ark. 193, 217 S.W.3d 829 (2005); *Pennington v. Harvest Foods, Inc.,* 326 Ark. 704, 934 S.W.2d 485 (1996); *Smith v. Walt Bennett Ford, Inc.,* 314 Ark. 591, 864 S.W.2d 817 (1993). The doctrine applies to remedies, not to causes of action, and bars more than one recovery on inconsistent remedies. *Wilson v. Fullerton,* 332 Ark. 111, 964 S.W.2d 208 (1998); *Smith,* 314 Ark. at 610, 864 S.W.2d at 828. Thus, even though the theories of recovery may not be inconsistent, such as those in contract and tort, recoveries on both theories are not allowed. *Smith,* 314 Ark. at 610–11, 864 S.W.2d at 828; *Thomas Auto Co. v. Craft,* 297 Ark. 492, 763 S.W.2d 651 (1989). In short, a plaintiff may pursue different theories of recovery; however, recovery on more than one theory for the same injury is not permitted. "Such a double recovery would be unconscionable." *Thomas Auto Co.,* 297 Ark. at 498, 763 S.W.2d at 654.

The remedies of a purchaser in cases of this kind were set forth in *Danielson v. Skidmore,* 125 Ark. 572, 189 S.W. 57 (1916), and have been quoted with approval in later cases:

A person who has been induced to enter into a contract for the purchase or exchange of lands by false representations concerning the quantity or quality may have either of these remedies which he conceives most to his interest to adopt. He may rescind the contract and by returning or offering to return the property purchased within a reasonable time entitle himself to recover whatever he had paid upon the contract. Again he may elect to retain the property and sue for damages he has sustained by reason of the false and fraudulent representations, and in this event the measure of his damages would be the difference between the real value of the property in its true condition and the price at which he purchased it. Lastly to avoid circuity of action and a multiplicity of suits, he may plead such damages in an action for the purchase money and is entitled to have the same recouped from the price he agreed to pay.

125 Ark. at 575–76, 189 S.W. at 58 (citations omitted). Here, the Colosos' remedies were inconsistent in that, on the one hand, they sought to disaffirm the contract by seeking rescission, while alternatively seeking to affirm the contract by filing an action for damages for the fraud and breach. *See Eastburn v. Galyen,* 229 Ark. 70, 313 S.W.2d 794 (1958); *Cleveland v. Biggers,* 163 Ark. 377, 260 S.W. 432 (1924).

■ The Colosos argue that they were entitled to wait until the circuit court made a determination of whether rescission was available before they were required to make an election. The fact that a party elects a certain remedy does not guarantee that the court will afford relief to the party making the election. *See Sharpp v. Stodghill,* 191 Ark. 500, 503, 86 S.W.2d 934, 936 (1935). Nor does the lack of success mean that the election is not binding. *Id.* at 503, 86 S.W.2d at 936.

The Colosos rely on *McIllwain v. Bank of Harrisburg,* 18 Ark.App. 213, 713 S.W.2d 469 (1986), for their argument that they should not be required to make an election until the court determined whether rescission was available as a remedy. In *McIllwain,* we held that a property owner had been erroneously forced to elect between specific performance for the sale of the property or the remedy of damages for breach of the contract of sale by being required to mitigate damages and that the duty to mitigate damages should have been postponed until it was determined whether specific performance was available as a remedy. We find such reliance misplaced because *McIllwain* is inconsistent with the supreme court's more recent pronouncement that the time of the election is *when the jury is instructed* instead of after a decision is rendered. *Regions Bank,* 364 Ark. at 196, 217 S.W.3d at 832. The circuit court relied on *Regions Bank* in ruling on the pretrial motions seeking to force the Colosos to make their election prior to trial. Moreover, when the circuit court revisited the issue at the close of the Colosos' proof and asked if they were prepared to make their election, they did not object, and we cannot say that the circuit court erred in the timing of the election.

■ The circuit court found that the house could not be returned to MREI in substantially the same condition as it was in at the time of the purchase by the Colosos. This finding is not challenged on appeal. The Marx defendants contend that the circuit court erred in awarding damages to the Colosos when they had elected to pursue the remedy of equitable rescission. Because rescission was unsuccessful as a remedy, the circuit court was certainly authorized to fashion any remedy justified under the proof. *Jones v. Ray,* 54 Ark.App. 336, 925 S.W.2d 805 (1996). *Jones* was a rescission case where the trial

court found that rescission was not warranted, but awarded the plaintiffs damages under the clean-up doctrine, which has recently been reaffirmed following the adoption of Amendment 80 to the Arkansas Constitution. *See Ludwig v. Bella Casa, LLC,* 2010 Ark. 435, 372 S.W.3d 792; *First Nat'l Bank v. Cruthis,* 360 Ark. 528, 203 S.W.3d 88 (2005); *Nat'l Bank of Ark. v. River Crossing Partners, LLC,* 2010 Ark. App. 841, 379 S.W.3d 789. Moreover, the supreme court has said that the rule that a court of equity may fashion any remedy justified by the proof is not so narrow as to require the court to substitute one equitable remedy for another. *Smith v. Eastgate Props.,* 312 Ark. 355, 361, 849 S.W.2d 504, 508 (1993).

The Marx defendants also argue that the circuit court denied them their right to a jury trial to determine the amount of the Colosos' damages. The election of an equitable remedy after the jury has heard some of the evidence, but before it is instructed or deliberates, appears to be an issue of first impression in Arkansas. However, after being required by the court, the Colosos announced that they were electing to pursue the equitable right of rescission, and the constitutional right to a jury trial does not extend to a case in equity. *S. Farm Bureau Cas. Ins. Co. v. Tallant,* 362 Ark. 17, 207 S.W.3d 468 (2005). Part of the argument made by the Marx defendants is that they are entitled to a jury trial simply because this is a fraud case. However, the fact that a party may have a tort remedy for fraud does not divest the concurrent jurisdiction of courts of equity to grant relief against fraud by canceling a written instrument obtained by fraud. *George v. Serrett,* 207 Ark. 568, 182 S.W.2d 198 (1944).

### Damages

The Marx defendants contend that the evidence as to the causation of the damages was speculative or that the damages were caused by the Colosos themselves. The Colosos assert that they had proved damages of at least $134,000.

As noted earlier, the circuit court concluded that the Marx defendants were guilty of fraud in their disclosure. In considering the appropriate remedy, the court made the following statement:

[I]t is impossible for the Court to determine the state of the mold infestation at the time of the sale. Likewise, it is impossible to apportion the level of mold due to [the Marx] Defendants' fraud versus that due to the [Colosos'] failure to follow recommendations which would have almost certainly greatly reduced or eliminated the mold before it became pervasive in the house. . . .

The court shortly thereafter stated that

the mold infestation was greatly exacerbated by [the Colosos'] failure to take curative actions recommended by persons they had hired, including actions that could have been undertaken at very little or no cost to them, [the Marx defendants] should not be made to pay the entire amount needed to restore the home.

The Marx defendants seize upon these statements to argue that the Colosos' evidence as to causation was based upon speculation and conjecture, or that the damages were caused by the Colosos themselves. They conclude that the Colosos are not entitled to any damages because, according to the Marx defendants, they bore the greater fault. On the other hand, the Colosos argue that they proved damages of at least $134,000 in the cost of repairs to the veranda tiles, the mold remediation, and the repairs to the EIFS. The Marx defendants also cite principles of negligence law such as proximate cause and comparative fault to argue that the

damages award must be reversed. However, those principles are inapplicable to the present case because the circuit court was sitting in equity in awarding damages.

The amount and measure of damages is a question of fact. *Quality Truck Equip. Co. v. Layman,* 51 Ark.App. 195, 912 S.W.2d 18 (1995). The circuit court considered the equities between the parties, including the problems caused by the Colosos, and made a reasoned decision that balanced those equities. As the Colosos point out, the court may adopt a measure of damages that awards the cost of putting the property in the condition as it was represented, if that is best suited to accomplishing substantial justice in the particular circumstances. *Knox v. Chambers,* 8 Ark.App. 336, 654 S.W.2d 582 (1983). We cannot say that the court was clearly erroneous in its damages award to the Colosos.

### Attorney's Fees

Under this point, the Marx defendants argue that there was no authority for the circuit court's award of attorney's fees to the Colosos. On the other hand, the Colosos argue that the court erred in not awarding them all of the requested fees.

We reject the Marx defendants' argument because the contract provided that the prevailing party *shall* be entitled to an award of fees and costs. The Marx defendants are mistaken in their view that attorney's fees cannot be awarded because the Colosos included tort claims for damages in their complaint. This argument is based on Arkansas Code Annotated section 16–22–308 (Repl.1999), which provides statutory authority for an award of fees to prevailing parties in contract actions. The statute does not, however, permit an award of attorney's fees in a tort case. *Barringer v. Hall,* 89 Ark. App. 293, 202 S.W.3d 568 (2005). The rule

upon which the Marx defendants rely arises from cases in which both contract and tort claims are pursued in a single action, where our courts held that fees are proper under the statute only when the action is based primarily in contract. *Jiles v. Union Planters Bank,* 90 Ark.App. 245, 205 S.W.3d 187 (2005). Here, however, the Colosos' request for fees is based on the contractual provision found in the real estate contract, not the statute. This agreement was enforceable according to its terms independent of the statutory authorization for attorney's fees set forth in section 16–22–308. *Marcum v. Wengert,* 344 Ark. 153, 40 S.W.3d 230 (2001); *Griffin v. First Nat'l Bank,* 318 Ark. 848, 888 S.W.2d 306 (1994); *Nef v. Ag Servs. of Am., Inc.,* 79 Ark.App. 100, 86 S.W.3d 4 (2002). Therefore, the Colosos' inclusion of a tort claim for damages is no impediment to an award of fees authorized under the real estate contract.

Nor is there any merit to the argument of the Marx defendants that the Colosos cannot rely on the contractual provision relating to attorney's fees because they sought to rescind the contract. In somewhat similar circumstances, our courts have held that section 16–22–308 can authorize an award of attorney's fees to a party who sought cancellation of a lease, *Sunbelt Exploration Co. v. Stephens Prod. Co.,* 320 Ark. 298, 896 S.W.2d 867 (1995), or to a party who successfully defends against a contract claim on the basis that there was no contract between the parties. *Cumberland Fin. Group, Ltd. v. Brown Chem. Co.,* 34 Ark.App. 269, 810 S.W.2d 49 (1991). Therefore, the fact that the Colosos sought to disaffirm the contract cannot defeat their recovery of attorney's fees.

A circuit court is not required to award attorney's fees and, because of the circuit judge's intimate acquaintance with the trial proceedings and the quality of

service rendered by the prevailing party's counsel, appellate courts usually recognize the superior perspective ⌊₁₅of the circuit judge in determining whether to award attorney's fees. *Jones v. Abraham,* 341 Ark. 66, 15 S.W.3d 310 (2000); *Chrisco v. Sun Indus., Inc.,* 304 Ark. 227, 800 S.W.2d 717 (1990). The decision to award attorney's fees and the amount to award are discretionary determinations that will be reversed only if the appellant can demonstrate that the circuit court abused its discretion. *Nelson v. River Valley Bank & Trust,* 334 Ark. 172, 971 S.W.2d 777 (1998); *Burns v. Burns,* 312 Ark. 61, 847 S.W.2d 23 (1993); *Chrisco,* 304 Ark. at 230, 800 S.W.2d at 719. Based on the record before us, we cannot say that the Marx defendants have shown that the circuit court abused its discretion.

We lack jurisdiction to consider the Colosos' arguments under this point because they failed to file a notice of appeal from the circuit court's order awarding the fees. Our supreme court has held that, where the order granting or denying attorney's fees is entered after entry of the judgment, the issue of attorney's fees is a collateral matter. *Craig v. Carrigo,* 353 Ark. 761, 121 S.W.3d 154 (2003). As such, the challenging party must file a notice of appeal from the fee order, and without such a notice, this court will not address any argument on the fee issue. *Id.* at 777, 121 S.W.3d at 164. Arkansas law is well settled that the failure to file a timely notice of appeal deprives the appellate court of jurisdiction. *Id.* at 777, 121 S.W.3d at 164. This rule applies to orders granting attorney's fees. *Id.* at 777, 121 S.W.3d at 164.

*Cross–Appeal of Claims against Envision*

Finally, the Colosos argue that the circuit court erred in dismissing their claims against Envision because Envision had a duty to investigate the discrepancies between the Nelson ⌊₁₆disclosure and the disclosure prepared by the Marx defendants. The Colosos also contend that Envision made false representations when it passed the Marx defendants' disclosure form to the Colosos.

Because Envision was not a party to the contract for which rescission was sought, rescission could not be granted against it. *Strout Realty, Inc. v. Burghoff,* 19 Ark.App. 176, 718 S.W.2d 469 (1986). However, the Colosos' election of remedies does not · mean that Envision could not be held liable for procuring the transaction through fraud. *Strout Realty,* 19 Ark.App. at 181, 718 S.W.2d at 471.

As to the fraud claims, the circuit court was correct in directing a verdict in favor of Envision on the fraud-related claims. The Colosos' entire fraud case against Envision is that Envision made false misrepresentations when it passed the Marx defendants' disclosure statement on to the Colosos. A real estate agent will not be held liable for constructive or legal fraud when his representation to the buyer was only a repetition, in good faith, of a statement authorized by his principal. *Strout Realty,* 19 Ark.App. at 185, 718 S.W.2d at 473. The testimony of Sharla Lau, the real estate agent handling the transaction for the Colosos, and the language of the disclosure form itself establish that the form is a warranty by the seller that the answers on the form are true, correct, and complete to the *seller's* knowledge. Because the Colosos never offered proof of a material representation made by Envision, their fraud claim must fail as a matter of law. *See Knight v. Day,* 343 Ark. 402, 36 S.W.3d 300 (2001).[2]

---

**2.** We deny Envision's motion to dismiss the      cross-appeal as to it. In its motion, Envision

605

Affirmed on direct appeal; affirmed on cross-appeal; motion to dismiss cross-appeal denied.

PITTMAN and WYNNE, JJ., agree.

relies on the supreme court's decision in *Johnson v. Carpenter*, 290 Ark. 255, 718 S.W.2d 434 (1986), for the proposition that where the matter sought to be appealed is separate from that which has been appealed in a timely manner, it should be the subject of an original appeal, and it may not be made timely by its denomination as a cross-appeal. However, *Johnson* is distinguishable from the present case in that two related cases were filed in two different courts and later consolidated for trial and were disposed of in a single order. The present case is one case involving multiple defendants and multiple causes of action. As such, it makes sense to consider this one case, not two separate cases as in *Johnson*. *See also Simpson Housing Solutions, LLC v. Hernandez*, 2009 Ark. 480, 347 S.W.3d 1.