Hugh Owen WINN et al.  *v.*  WINN ENTERPRISES,
LIMITED PARTNERSHIP, et al.

CA 06-1375                                                265 S.W.3d 125

Court of Appeals of Arkansas
Opinion delivered October 10, 2007

*Burbank Dodson & Barker, PLLC,* by: *Don B. Dodson,* for appellants.

*Harrell, Lindsey & Carr, P.A.,* by: *Paul E. Lindsey,* for appellees.

DAVID M. GLOVER, Judge. This appeal involves a dispute over the valuation of a family limited partnership when some of the members of the partnership withdrew. The circuit court

determined the partnership's value and then applied discounts for lack of marketability and for being a minority interest to the withdrawing partners' proportionate interests to arrive at the amount due the withdrawing partners. The partnership assets include 880 acres of timberland in Union County, together with oil and gas royalty interests and cash on hand. The withdrawing partners appeal, challenging the application of the discounts. The partnership and the remaining partners cross-appeal, arguing that the circuit court should have adopted the lower asset valuation suggested by one of the partnership's expert witnesses. We reverse on direct appeal and affirm on cross-appeal.

Appellants Hugh Winn, Nancy Winn, Bonnie Winn, Frank Winn, Jean Roland, and the Joan W. Culver Revocable Trust and appellees Lawrence Lyle, James Winn, Debbie Snyder, Mary Winn, Darrell Winn, Donald Winn, Deanne Prellwitz, and the Illa F. Winn 1999 Trust are the members of appellee Winn Enterprises Limited Partnership (the partnership). Lyle serves as the general partner, and the rest are limited partners. Hugh Winn, Nancy Winn, Bonnie Winn, and Frank Winn each have a 5.392857143% interest in the partnership, while Roland and the Joan Culver Revocable Trust each have a 3.595238095% interest. The partnership's timberland was originally acquired by James Russell Winn in 1848 by a federal land grant. The partnership was formed in 1984 for the express purpose of keeping the land in the Winn family. The original members of the partnership at the time of its formation were the sole owners of the 880 acres.

The partnership agreement provides that a partner may withdraw upon six months' notice to the partnership and the other partners. Upon withdrawal, the withdrawing partner "shall be entitled" to receive the "fair value" of that partner's interest in the partnership as of the date of withdrawal. The partnership agreement was amended in October 2002 to provide that the partnership shall have a "right of first refusal" if a partner desires to sell his or her interest to someone outside the family.

On December 13, 2004, appellants filed their complaint seeking payment of the "fair value" of their interests. In the alternative, appellants sought judicial liquidation of the partnership. Appellees denied the material allegations of the complaint and noted that the 880 acres are ancestral land.

The matter was tried to the bench in January 2006. Jeff Neill, a certified general real-estate appraiser and a registered

forester, testified for appellants and valued the timber at $1,900,000. He said that he adjusted his appraisal to account for a timber sale that occurred after he completed his fieldwork for the appraisal. He added on redirect that a discount was not part of the scope of his work because he was determining the value of the entire tract. Peter Emig, a certified appraiser, testified that the partnership's royalty interest was worth $29,000 as of May 3, 2004.[1] He was not asked to apply a discount, nor did he think one was appropriate.

Hugh Winn testified that the withdrawing partners disagreed with the management of the partnership because they (the withdrawing members) wanted to convert the partnership to a limited liability company. He valued his interest as being $105,644.95, based on his proportionate interest of the values established by Neill and Emig. He said that he valued the interests of the Culver Trust and Jean Roland at $70,430.56 each. On cross-examination, he said that a discount was not appropriate because he was not attempting to sell his interest to a third party. He also observed that appellees' interest will increase once appellants withdraw.

Lawrence Lyle, the general partner of the limited partnership, had no objection to Emig's valuation of the royalty interest at $29,000. He gave an opinion that a discount was customary and appropriate. On cross-examination, Lyle acknowledged that his interest in the partnership would be enlarged with appellants' withdrawal. The testimony of Donald Robinson, another member of the partnership, was to the same effect.

Mike Nolan, a forester and a certified appraiser, testified on behalf of the partnership. He valued the land and timber at $1,498,000, excluding the April 2004 timber sale. On cross-examination, he admitted that he did not apply a discount to his valuation in the present case because it was not part of his assignment. He also said that his appraisal did not comply with state appraisal guidelines.

Appellees also presented the testimony of their valuation expert, Ted Duncan, a certified public accountant. He said that he had reviewed the appraisals of Neill, Emig, and Nolan, as well as other financial documents and records as part of his valuation

---

[1] He also proffered an updated report showing the value of the royalty interest to be $59,000 as of the date of trial.

process. Duncan used Emig's valuation of the royalty interest and Nolan's appraisal of the timber interest, together with cash on hand to arrive at a valuation of $1,633,859 for the partnership's assets. He said it was common for discounts to be applied in valuing a minority interest in a limited partnership. Accordingly, Duncan applied a 30% discount for lack of control and a 15% discount for lack of marketability. His ultimate "fair market valuation" of the 5.392857143% interest was $52,231, while his fair market value of the 3.595238095% interest was $34,954. Although acknowledging that the partnership agreement called for the withdrawing partners to receive the "fair value" for their interests, it was Duncan's opinion that it was the same as the "fair market value" in this case. He also said that there could be circumstances where the term "fair value" could be interpreted differently, and he gave as an example the case of a dissenting shareholder. On cross-examination, he said that, if "fair value" and "fair market value" were interpreted differently, it would require different methods of valuation.

The circuit court issued a letter opinion in which it found Neill's testimony to be more credible and persuasive. The court adopted his valuation of the timber and land of $1,900,000 as part of the court's overall valuation of the partnership assets of $2,035,859. The circuit court then noted that it was persuaded by the testimony of Ted Duncan that the total should be discounted by 30% due to lack of control and by 15% for lack of marketability. This resulted in Hugh Winn, Nancy Winn, Bonnie Winn, and Frank Winn each having their interests valued at $60,445.44 while the interests of Jean Roland and the Jean W. Culver Revocable Trust were each valued at $40,256.69. A written order memorializing the court's decision was entered on May 26, 2006. This appeal and cross-appeal followed.

Appellants' sole point on appeal is that the circuit court erred by applying discounts for lack of control and for lack of marketability in determining the value of their interests in the partnership. We hold that the circuit court erred in applying the discounts.

Appellants primarily rely on our supreme court's decision in *General Securities Corp. v. Watson*, 251 Ark. 1066, 477 S.W.2d 461 (1972), a case involving dissenting shareholders objecting to a merger and seeking payment of the "fair value" for their shares under what is now Ark. Code Ann. § 4-26-1007 (Repl. 2001). There, the court recognized that there is no set standard or formula

to determine the "fair value" of stock and cited with approval a Maryland case holding that discounts were not appropriate in determining the "fair value" for a dissenting shareholder. *Id.* (citing *American Gen. Corp. v. Camp*, 171 Md. 629, 190 A. 225 (1937)).

Appellants also rely on the Eighth Circuit's decision in *Swope v. Siegel-Robert, Inc.*, 243 F.3d 486 (8th Cir. 2001), another case involving dissenting corporate shareholders. There, the court reviewed decisions from Missouri, New Jersey, Delaware, Maine, South Dakota, Oregon, and Kansas wherein the courts rejected application of discounts. Based on the reasoning of those courts, the *Swope* court concluded:

> The marketability discount is incompatible with the purpose of the appraisal right, which provides dissenting shareholders with a forum for recapturing their complete investment in the corporation after they are unwillingly subjected to substantial corporate changes beyond their control. . . .

. . . .

> We conclude that the market for minority stock in a dissenting shareholders' appraisal proceeding, absent extraordinary circumstances, is not a relevant fact or circumstance to consider when determining fair value.

*Swope*, 243 F.3d at 493–94.

Even though *Watson* and *Swope* both involved dissenting shareholders in corporations, they are instructive here because, contrary to Ted Duncan's testimony, a withdrawing partner under Ark. Code Ann. § 4–43–604 is in a position analogous to a corporation's dissenting shareholders. Sections 4–26–1007 and 4–43–604 both use the term "fair value" to describe what is to be paid to the dissenting shareholder or the withdrawing partner for his or her interest. In both instances, the individual (whether a dissenting shareholder or a withdrawing partner) is exercising a statutory right to withdraw from the entity and the entity is absorbing that interest. If discounts are applied, the entity obtains the withdrawing shareholder or partner's interest for less than that interest would be worth in the hands of the withdrawing shareholder or partner. Further, because the two situations are analogous and the General Assembly used the term "fair value" in both

statutes to specify the type of value the withdrawing partner or shareholder is to receive for his or her interest, we hold that the "fair value" provided for in section 4-43-604 does not include discounts for lack of control or lack of marketability. On similar facts, a Maryland court used the same analysis to conclude that discounts were not applicable in the determination of "fair value" under a statute identical to Ark. Code Ann. § 4-43-604. *East Park Ltd. P'ship v. Larkin*, 167 Md. App. 599, 893 A.2d 1219 (2006). The American Law Institute and various commentators are also in agreement that discounts should not be applied in determining the "fair value" of a dissenting shareholder's or withdrawing partner's interest.[2]

■ As noted above, Ark. Code Ann. §§ 4-26-1007 and 4-43-604 both provide for "fair value" not "fair market value." Neither statute defines the term "fair value." Ted Duncan testified that, in the circumstances of this case, they are the same. We disagree. *Black's Law Dictionary*, 1549 (7th ed. 1999) defines fair market value as "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction[.]" On the other hand, "fair value" is determined by ascertaining all assets and liabilities of the business and the intrinsic value of its stock rather than merely appraising its market value. *See American Gen. Corp., supra.* In the case of dissenting shareholders or withdrawing partners, there is no sale on the open market; their situation is more akin to a forced sale. *East Park, supra.* The difference between "fair market value" and "fair value" also serves to distinguish the present case from the line of cases that determine the value of stock in a divorce because our divorce code, Ark. Code Ann. § 9-12-315, specifically requires the use of "fair market value" in the valuation of stock in a divorce. *See, e.g., Cole v. Cole,* 82 Ark. App. 47, 110 S.W.3d 310 (2003); *Crismon v. Crismon*, 72 Ark. App. 116, 34 S.W.3d 763 (2000).

---

[2] *See* Am. Law Inst., *Principles of Corporate Governance: Analysis and Recommendations* § 7.22(a) (Standards for Determining Fair Value) & cmt. e (1994); Harry J. Haynsworth IV, *Valuation of Business Interests*, 33 Mercer L. Rev. 457, 459 (1982); Joseph W. Anthony & Karlyn V. Boraas, *Betrayed, Belittled . . . But Triumphant: Claims of Shareholders in Closely Held Corporations*, 22 Wm. Mitchell L. Rev. 1173, 1186 (1996); and Barry M. Wertheimer, *The Shareholders' Appraisal Remedy and How Courts Determine Fair Value*, 47 Duke L.J. 613, 636-37 (1998).

Because the circuit court erred in applying the discounts, we reverse and remand with directions that the circuit court determine the value of appellants' interests without application of discounts.

Appellees raise one point on cross-appeal and argue that the circuit court erred in adopting the valuation fixed by appellants' expert instead of the valuation suggested by their own expert. The strength or lack of strength of the evidence on which an expert's opinion is based goes to the weight and credibility, rather than to the admissibility, of the opinion in evidence. *Killian v. Hill*, 32 Ark. App. 25, 795 S.W.2d 369 (1990). Where the testimony shows a questionable basis for the opinion of the expert, the issue becomes one of credibility for the fact-finder, rather than a question of law. *Id.* Here, Nolan admitted that his appraisal did not adhere to state standards for appraisals. The circuit court made a specific finding that Neill's appraisal was more credible, and we defer to that assessment.

Reversed and remanded on direct appeal; affirmed on cross-appeal.

VAUGHT and HEFFLEY, JJ., agree.