

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-12-1093

| | |
|---|---|
| | **Opinion Delivered** March 19, 2014 |
| BROOK A. ROGERS | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, |
| APPELLANT | FIFTEENTH DIVISION [NO.DR-2004-720] |
| V. | |
| DENA A. ROGERS | HONORABLE RICHARD A. MOORE, JR., JUDGE |
| APPELLEE | |
| | REVERSED AND REMANDED |

## BRANDON J. HARRISON, Judge

Brook Rogers appeals the Pulaski County Circuit Court's decision ordering him to pay Dena Rogers certain marital retirement benefits. Brook argues that the circuit court erred in ruling that he owed Dena $40,709.85 in retirement benefits. We reverse the court's order that awarded Dena $40,709.85 and remand the case for further proceedings.

I. *Factual and Procedural Background*

Brook and Dena married in June 1993 and divorced in March 2005. The March 2005 divorce decree divided their property, including individual retirement accounts. Approximately three years after the divorce decree was entered, orders purporting to be Qualified Domestic Relations Orders (QDROs) were entered. Arkansas Code Annotated section 9-18-101 (Repl. 2009) defines a QDRO as being a state domestic-relations order that creates or recognizes an alternate payee's right to receive benefits of a participant's

SLIP OPINION

retirement plan. Section 9-18-102(a) (Repl. 2009) empowers circuit courts to enter qualified domestic relations orders that reach "any and all retirement annuities and benefits of any retirement plan."

Some of the delay between the entry of the 2005 divorce decree and the 2008 QDROs appears to have been attributed to protracted post-decree negotiations between the parties and their attorneys. In any event, about two weeks after the QDROs were entered, Dena filed a motion for contempt. She alleged that Brook deposited approximately $84,000 of marital funds into an IRA that he opened after the divorce decree had been entered and that she was entitled to receive half of the money. The court took no action on that motion. Dena filed a second contempt motion in February 2009. The court held a hearing in February 2010 on contempt issues and received testimony about Brook opening and funding the IRA. The court ruled on the other issues raised at the hearing, but it specifically reserved ruling on whether Dena was entitled to some of the money in Brook's retirement accounts. The court received more evidence and testimony on the retirement-account issues at a child-support hearing held in May 2010. (More on this shortly.) In August 2012, nearly two years after the final hearing, the court entered a written order stating that Brook owed Dena $40,709.85 in marital retirement benefits. That order spawned this appeal.

## A. The Retirement Accounts

We have mentioned an IRA account that Brook claims to have opened with non-marital funds after he was divorced from Dena, but a number of other accounts were raised in circuit court.

2



Dena owned one retirement account, a Federal Employee Retirement account, that was titled solely in her name during the marriage, but it is not at issue in this appeal. Brook held three retirement accounts solely in his name during the marriage. Specifically, when the divorce decree was entered he held an AT&T (later SBC) Pension Plan; an AT&T/SBC 401(k) Savings Plan; and a Janus Fund IRA. Dena has not challenged how the circuit court distributed Brook's AT&T/SBC Pension Plan, so it is not at issue. Only the AT&T/SBC 401(k) plan and the Janus Fund IRA are important to this appeal. And the two retirement accounts created after the divorce, the 2006 USAA Roth IRA and the 2008 USAA IRA, are at issue.

During the hearings held in 2010, Dena argued that, shortly after the 2008 QDROs were entered, Brook had "moved and relocated" his AT&T/SBC 401(k) that contained about $112,000—and his Janus Fund retirement account that contained about $84,000—to a new IRA with USAA. Though the issue is muddled in the record, the bottom line appears to be that Brook rolled his AT&T/SBC 401(k) and his Janus Fund account into one large account—a USAA IRA—after the divorce was granted but before the 2008 QDROs were entered. The July 2008 QDRO, which addressed Brook's AT&T/SBC 401(k) plan, showed that this transfer had likely occurred because the order listed USAA as the plan administrator for the 401(k). It seems that all the money from the AT&T/SBC 401(k) and the Janus Fund account has remained in the USAA IRA since Brook first moved it there in May 2008. Title to the USAA IRA is held by the "Brook Rogers Trust."



### 1. *The Janus Fund*

One critical issue was the content and value of the Janus Fund account that Brook held solely in his name during the marriage. Brook testified that he started the Janus Fund retirement account in 1983, years before he married Dena. Dena testified at the first hearing in February 2010 that the Janus Fund's value was $9,000 when she and Brook married. Brook argued a pre-marital value of nearly $28,000. Brook produced evidence that the Janus Fund account contained two separate funds—Fund No. 42 and Fund No. 43—that were consolidated under one account number. At the second hearing in May 2010, Brook produced retirement-account statements issued about six months before the marriage showing that Janus Fund No. 42 was valued at $13,317.29 and Fund No. 43 (also known as the Janus Twenty Fund) was valued at $14,085.55.

Brook and Dena testified that they jointly contributed around $8,000–$10,000 to Brook's (consolidated) Janus Fund retirement account while married. The couple's joint tax returns support the testimony because they show that Brook claimed a $2,000 IRA deduction in 1993, 1994, 1995, and 1996. A Janus Fund statement reported a value of $54,474 in 1996. And the parties agreed that the Janus Fund's total value was around $84,000 when they divorced in 2005. Ultimately, the circuit court had to decide how much of the Janus Fund money Dena was entitled to receive.

### 2. *Roth IRA*

Dena also alleged at the first hearing that Brook, in 2006, had opened an $8,000 Roth IRA with USAA using marital funds. The evidence Dena presented to link Brook's post-divorce Roth IRA to marital funds was a July 2008 QDRO and the allegation that he had



rolled the Roth IRA into the USAA IRA account that was opened in May 2008. The July 2008 QDRO gave Dena a $4,000 lump-sum payment as alternate payee, but the plan administrator and address on the QDRO does not match the plan administrator name and address on the Roth USAA IRA account. It came out during the second hearing that federal tax regulations do not permit a person to roll over a Roth IRA into a regular IRA account, making Dena's allegation that Brook had rolled over the Roth IRA into the USAA IRA unlikely.

Brook told the court that he funded the Roth IRA with his separate money after the divorce decree was entered and produced a check he had written for $8,000. The check has the payor as Brook A. Rogers, Trustee the Brook A. Rogers Trust. The payee is USAA Federal Savings Bank. The check is dated January 2006. Regarding the July 2008 QDRO, he argued that it applied to the USAA regular IRA account that held the money from the Janus Fund and his 401(k), not to his Roth IRA. He maintained that Dena was not entitled to the Roth IRA money and that she should only receive one-half of the marital contributions made to the Janus Fund during the marriage, which was $4,000. Dena stated that a QDRO has never accounted for the $84,000 from the Janus Fund.

### B.  Expert Witness Jim Pearson

Dena called a certified public account, Jim Pearson, as her expert witness. Pearson was the only expert who appeared in the case, and he provided the court with several spreadsheets and flowcharts to explain why Dena was entitled to particular sums from the Janus Fund and Brook's other retirement accounts, including his AT&T/SBC 401(k). On direct examination, Pearson testified that Dena should get $20,522.93 from the Janus Fund, a number, which at

the time of the final hearing, was directly traceable to the USAA IRA. Pearson based this figure on the growth of the contributions that Brook and Dena had made to the account while married. He also told the court how he calculated interest and the amount of interest Brook owed to Dena since the divorce. Pearson said that Dean should receive $5,010.08 ($4,000 plus interest) from the Roth IRA, and $9,864.66 ($7,875.85 plus interest) from Brook's AT&T/SBC 401(k). According to Pearson, the total amount of Brook's retirement benefits that Dena was entitled to receive was $40,658.18. This number was a stone's throw from the amount the circuit court did award.

Speaking of the proof, there was some debate over what documents Pearson had access to while preparing his report. Pearson undoubtedly saw some of the documents for the first time on cross-examination. More important to this appeal is Pearson's statement on cross-examination that he had used approximately $11,000 as the starting account balance for the Janus Fund. He did not, however, combine the totals of Fund No. 42 and Fund No. 43 because they were "two separate funds" in his opinion. Although the three tax returns he had while preparing his report only showed that the couple declared $6,000 in deductions for IRA contributions for Brook while married, Pearson maintained that Brook and Dena contributed $9,155 of marital money to the Janus Fund account in 1994, but he did not fully explain how he arrived at $9,155. On redirect, Pearson stated that he was confident that his calculations of Dena's marital interest in the Janus Fund were accurate because the 1996 Janus Fund statement showing a balance of $54,474.50 was one of his "source documents." Later, however, Pearson acknowledged that if he had mistakenly added a non-retirement account to his retirement calculation, then every subsequent retirement-related calculation would be affected.



### C.  The Circuit Court's Ruling

At the end of the May 2010 hearing, the court made these oral findings on the retirement-account issues:

> Misplaced hope that all documents would be exchanged that were material and apparently they were not because inadvertently or otherwise Mr. Rogers has based some of his argument and calculations on documents that were not produced . . . pursuant to the last order that was an attempt to get a base number of whatever was premarital. And, again, I am plowing the same ground figuring in what was marital contributions and the appropriate interest on the marital contributions and whatever the previous years' interest as compounded in these retirements.  The situation that we end up with is back [to] where we were before.  Except at this point and time I have a CPA saying with the source documents he had he has made these calculations. And that his calculation if my addition is correct on the slight adjustment from his source document to the total that he sees is owed as marital funds is $40,709.85[,] [w]hich is adding $51.67 to the total on the first page of Plaintiff's Exhibit 14 [.] Mr. Rogers contends that there were situations involved where non or premarital funds were added into the calculations that should have been excluded or deducted.  He contends that everybody got their IRA funds although the decree states there is $7,000.00 that was owed over to the Plaintiff at the time of the decree.  No evidence one way or the other where those funds are. And, again, one of the problems is that we have taken different funds merged, rolled, and so forth into other accounts.

> The only cohesive calculation and paper trail that has been produced here has been from [Dena].  [I]f I haven't helped [Brook] mark his exhibits, he wouldn't even have a record in this case. The situation of proving anything as a nonmarital asset is charged to the Defendant who claims it to be nonmarital. These accounts existed during marriage and were either merged or rolled into other accounts during or post decree. . . . I have attempted with what I think is unusual patience to allow everybody the opportunity to get whatever document before one another to try to compute an accurate amount. . . . [Y]et today some document that Mr. Rogers thinks is a key document is produced that was not produced before, and he states that it wasn't available to him or didn't have it prior.  Obviously he got it prior to our hearing today, and the same should have been given if he wanted it considered.

> So it appears to me from the proof today, from the testimony that I have received, that the proper amount that is due to Dena Rogers is the $40,709.85. And Mr. Rogers you can throw your hands up and so forth.



. . . .

The order of the Court is there is owed that amount pursuant to the previous decree, the QDROs, all orders that have been entered in this matter. One of the problems is that even after the time and before the retirement funds were divided, these funds were commingled, were rolled, and funded into other accounts.

The court's final written order states: "[Brook] owes [Dena] as marital retirement benefits the sum of $40,709.85. This amount shall be transferred to [Dena] by Qualified Domestic Relations Order within ten (10) days of entry of this order."

## II. *Analysis*

Brook's appellate argument boils down to the contention that Pearson's calculation of the marital retirement benefits was wrong and the court's award to Dena is likewise mistaken because the court relied upon Pearson's opinion when it awarded her $40,709.85.

Here are the particular mathematical errors that Brook alleges that Pearson and the court made below and which require us to reverse:

- Pearson's beginning balance of non–marital funds was wrong because he started with $11,533.66 when he should have started with between $27–28,000 based on the money in Funds No. 42 and 43 in the Janus Fund account. In other words, Pearson mistakenly decided to treat Funds No. 42 and 43 as separate accounts rather than one account. In Brook's view, Pearson's initial error adversely affected his subsequent calculations, all of which the circuit court in turn mistakenly relied on.

- The $11,155.88 shown in Pearson's worksheet as a marital contribution in 1994 was incorrect because there was no accounting of where that money came from and the parties' testimony contradicts Pearson's conclusion that a marital contribution equaling $11,155.88 was made in 1994. This means, according to Brook, that Pearson's total marital contribution value ($19,155.88) was also incorrect because the couple's joint tax returns, and their testimony at the hearing, reflect that they did not contribute more than $10,000 to the account while married.

 

- Pearson used the July 2008 $4,000 QDRO to calculate Dena's interest in Brook's Roth IRA when the Roth IRA was created after the divorce with non-marital funds. The account that the QDRO applied to was the regular USAA IRA, so if anything the $4,000 QDRO should apply to that account.

Equity cases are reviewed de novo and "a complete review of the evidence and record may take place as part of the appellate review to determine whether the trial court clearly erred in either making a finding of fact or in failing to do so." *Duncan v. Duncan*, 2011 Ark. 348, at 8, 383 S.W.3d 833, 838. A circuit court's findings of fact may not be set aside unless they are clearly erroneous. *Id.* A finding of fact is clearly erroneous when, although there is evidence to support it, we have a definite and firm conviction that a mistake has been made. *Id.* If testimony or documentary proof shows a questionable basis for an expert's opinion, then the issue becomes a credibility call that the fact-finder must make. *See Winn v. Winn Enters., Ltd. P'ship*, 100 Ark. App. 134, 265 S.W.3d 125 (2007).

Brook and Dena seem to agree on one thing: the circuit court relied on Pearson's expert opinion in deciding how much money Dena should receive as marital retirement benefits. We agree, and must therefore side with Brook's contention that the court erred by awarding more than $40,000 in retirement benefits to Dena based on Pearson's calculations. To start, there was no evidence that Brook funded his $8,000 Roth IRA with marital funds. The proof was to the contrary; he submitted (unrebutted) documentary proof that he opened the account, after the divorce, with his separate money. Because the Roth account was opened after the divorce and with Brook's separate money, the court erred when it included the Roth IRA money (Pearson's "figured interest on $4,000") in its calculation of what Brook owed Dena under the



divorce decree. Moreover, we conclude that there was an insufficient basis to apply the $4,000 2008 QDRO to the Roth IRA account because the address and plan administrator listed on that QDRO did not match the Roth IRA account information.

Turning to the Janus Fund, there is no evidence of record to support Pearson's calculation of the value of non-marital money in the Janus Fund in 1993. The starting non-marital amount Pearson used for the year 1993 was $11,533.66—a number that is not close to any numerical figure in any Janus Fund-related document or the other documents in the record we have. In contrast, Brook produced specific statements from the Janus Fund, one from December 1992 (Fund No. 42) and one from January 1993 (Fund No. 43), showing in 1993, but before the parties were married that year, that the Janus Fund had approximately $27,400 in it. While the Janus Fund retirement money was in two different funds (Nos. 42 and 43), both funds had the same Janus Fund account number; and that consolidated account number existed when the couple divorced. Because Pearson's starting non-marital balance for the entire Janus Fund account was clearly incorrect, his related calculation of Brook's marital contribution to the Janus Fund account ($19,155.88) was also mistaken. Given these errors, we hold that the court's award to Dena was likewise clearly erroneous. We do so with some empathy, for the circuit court was patient and attentive while presiding over what turned out to be a protracted and difficult case.

Nevertheless, we reverse the circuit court's retirement-benefits award of $40,709.85 to Dena and remand this case for proceedings consistent with the 2005 divorce decree and the parties' interests.



Reversed and remanded.

WHITEAKER and WOOD, JJ., agree.


*Robertson Law Firm, PLLC*, by: *Robert "Chris" Oswalt*, for appellant.

*Stephen Cobb*, for appellee.